No. 2456.

## SOLOMON PARKS v. THOMAS O'CONNOR.

1. DAMAGES—INTEREST.—On breach of a written contract by the obligee which by its terms stipulates for twelve per cent interest on deferred payments for specific articles contracted for and to be delivered to such obligee under it, when there is a partial delivery only, and the obligor recovers judgment, he is entitled to the contract price of the articles delivered and the conventional interest of twelve per cent specified in the contract. The breach does not entitle the defendant to claim a reduction of the interest to the amount allowed by the statute when no interest is specified by the contracting parties.

2. SAME—LIEN.—When a contract stipulates for the execution of a mortgage on the delivery of articles sold to secure purchase money, if it be

---

Statement of the case.

---

broken by the obligee after partial delivery the vendor is entitled in equity to a mortgage lien on the articles delivered, which will be enforced between the parties to the contract.

3. DAMAGES.—Damages so remote that from their character they could not have been considered by the parties as a result of a breach of the contract when it was made, can not be recovered.

4. ESTOPPEL.—When the purchaser of personal property under an executory contract for its sale and delivery, inspected it before receiving, he is estopped, as to patent defects, from denying that it was of the character bargained for, and this though he may have received it under protest.

5. CUSTOM.—In a contract for the delivery of cattle, when the word "yearlings" is used it is competent to prove the local custom among stock men as to age of cattle coming within the meaning of the word.

6. GOOD MERCHANTABLE CATTLE.—A contract to deliver "good, merchantable cattle" means cattle not merely good for purposes of sale, but good in fact, and if at the time of delivery they are infected with a latent disease then unknown to either party, and the purchaser suffers loss thereby, as a proximate result, he is entitled to recover damages.

APPEAL from Goliad. Tried below before the Hon. H. Clay Pleasants.

The following statement of the nature and result of the suit below, made by appellant's counsel, and not controverted, is adopted:

Appellee sued upon a contract of date April 25, 1885, setting out the contract wherein appellee agreed to deliver to appellant eight thousand head of mixed yearlings, all to be good, merchantable cattle, to be delivered in three herds; time fixed for delivery of first herd, May 15, 1885; afterwards extended by agreement to June 15, 1885. Defendant agreed to pay for same within twelve months, one-half at bank of O'Connor & Sullivan, San Antonio, the other half at bank of Brownson & Sibley, Victoria, and to pay interest at twelve per cent "from date of notes to be hereafter executed," and to execute lien to secure purchase money on certain property named, said lien deed of trust to be executed on delivery of first herd; also to execute lien on the cattle sold under said contract.

Appellee avers the delivery by him under this contract of five thousand three hundred and eighty-four head of cattle, and full compliance or tender to comply with all the terms of the contract, and failure on part of appellant to receive the cattle in full, to execute lien or note, or to pay for the cattle received by him, and prays for the value of five thousand three hundred

and eighty-four head at eight dollars per head, and one thousand dollars damages. He also claimed a lien on the property and prays that the same be established and foreclosed, upon the ground that he was entitled to the lien, and that appellant has shipped and sold others of the cattle upon which he claimed the lien, he prayed for an injunction, which was granted.

Appellant admitted the contract, but alleged that the extension of time was from May 15 to June 5, and not 15, as claimed by appellee. That with the knowledge and consent of appellee he contracted with Shiner & Williams for sale of the heifers purchased of appellee, to be delivered June 5; that he was put to great expense in maintaining outfit to receive the cattle from the fifth to the fifteenth of June, for which he asks judgment; that by reason of said delay, Shiner & Williams were also delayed at great expense, which appellant had to pay, for which he asks judgment. Appellant alleged that he did not receive the first herd claimed by appellee to have been delivered; that appellee put them into appellant's pasture with the understanding that appellant should inspect, count and pass upon same the next day; that in passing upon them he rejected seven hundred and eighty-eight as wholly failing to be such cattle as called for in the contract; that appellee refused to receive these back, and he prayed a credit for their price at eight dollars per head, to wit, six thousand three hundred and four dollars, or in the alternative that he be only charged with their actual value, claimed to be less than three dollars per head. Appellant further alleged a latent disease with which the cattle were afflicted unknown to appellant, but known to appellee, by reason of which one thousand two hundred and thirty-five head of said cattle died, and prayed judgment therefor to the amount of nine thousand eight hundred and eighty dollars. Also that four hundred of those sold to Shiner & Williams died from that disease, for which he had to pay his vendees the sum of three thousand two hundred dollars, for which he prayed credit; that the number claimed by appellee to have been delivered in the first herd were short twenty of the number claimed, for which he prayed a credit for two hundred and thirty-two dollars. Appellant alleged and appellee admitted that appellee delivered to Williams one herd on order of appellant. Appellant alleged a deposit with O'Connor & Sullivan, bankers in San Antonio, of a note by Shiner & Williams for twenty thousand dollars to him; that by reason of delay in delivering the cattle, and

their death by disease, the makers enjoined appellee and his partner from payment of that note, and to release the note from the injunction appellant was compelled to pay Shiner & Williams the sum of four thousand three hundred and ten dollars.

Appellant admitted the sale and shipment of the cattle as alleged, but claimed the same were made by consent of appellee, who himself, delivered a portion of same to appellant's vendee on the order of appellant; he claimed pasturage for cattle he was forced to hold over on account of their being unmerchantable; he claimed failure of appellee to deliver the number, quality and class of cattle as per contract; he also claimed a breach of contract and forfeiture by appellee of right to enforce same, either as to price of animals, the execution of lien or rate of interest; and that by reason of appellee's assent to the sale of cattle purchased from him, appellant waived lien upon them; that by reason of said forfeiture of rights under the contract, and his waiver of lien and his assent to sale and shipment of the cattle, his grounds for the injunction were false and he claimed actual damages for the suing out of the injunction wrongfully and without cause in the following items to wit: breaking up business of appellant, five thousand dollars; depreciation in value of cattle enjoined, two thousand seven hundred dollars; and alleging his title to a large amount of property in Goliad county far in excess of anything he might owe appellee, he claimed punitive damages for suing out the injunction maliciously and without probable cause, to the amount of ten thousand dollars. Appellant demurred to appellee's petition, which was overruled by the court. He demurred specially to appellant's answer, most of which the court sustained, striking out the following pleas of appellant, to wit: Appellant's claim for damages he was compelled to pay to Shiner & Williams; appellant's plea for waiver and release of lien by appellee; appellant's claim of enhanced value of steer yearlings not delivered in accordance with contract; appellant's plea of waiver of right to receive twelve per cent interest; all allegations that the cattle delivered were not in accordance with contract; appellant's plea for damages, actual and exemplary, for wrongfully and maliciously suing out the injunction, and appellant excepted. The jury then returned a verdict for appellee for forty-eight thousand two hundred and ninety-four dollars and ninety-five cents, saying nothing about a lien, said sum em-

bracing interest at twelve per cent. The court entered judgment for the amount with twelve per cent interest and established and foreclosed a lien on the property described by appellee's petition.

*Fly & Davidson,* for appellant: More than eight per cent interest can only be collected upon express agreement to that effect in writing (Const. 1876, art. 16, sec. 11; Rev. Stats., arts. 2976–2978); and a contract to execute at a future time not named a note to draw twelve per cent interest, which contract sets out conditions to be complied with by both parties, is not an agreement in writing to pay twelve per cent interest, nor can such a rate be enforced until it is shown that all the terms of the contract have been fully complied with, and then only from date of entire fulfillment of all the conditions of the contract. (O'Connor v. Van Horne, 1 Dall., 420; Gonzales College v. McHugh, 21 Texas, 257; Hollis v. Chapman, 36 Texas, 1; Carrol v. Welch, 26 Texas, 147; 2 Benj. on Sales, sec. 857, note 3; sec. 858, note 42; sec. 1032 and notes; 2 Pars. on Con., pp. 33 to 35, especially note "D," p. 35; 2 Schouler on Pers. Prop., sec. 390.)

A party having a lien on property in possession of another who, without perfecting or enforcing the same, consents to a sale of the property by the one so holding, thereby waives his lien and all rights to the same. (4 Wait's Act. and Def., sec. 12, p. 332; and sec. 13, p. 333; 7 Wait's Act. and Def., 220 and 221.)

A party to a contract who fails to comply with the terms of the contract, or by fraud, deceit or imposition induces the other to do that which results in his loss, is liable for the loss sustained by such default, fraud, deceit or imposition. (Wintz v. Morrison, 17 Texas, 372; Sedg. on Dam., 5 ed., 326.)

Receipt of property under protest is not an acceptance under the contract, but leaves the buyer liable only for the actual value of the property so received; and allegations properly made to the effect that the property was not received as complying with the contract, and that it was not such as stipulated for in the contract, present questions of fact for the jury. Williams v. Chandler, 25 Texas, 4; 2 Willson's Civil Cases, sec. 381; Bigger v. Benard, 17 American Law Review, 743; also 25 American Law Register, 280, 142, note.)

If an injunction be wrongfully sued out and without cause. the party enjoined may recover actual damages, if it be not only wrongfully sued out and without cause, but be maliciously sued out and without probable cause, he may also recover exemplary damages. (Jordan v. David, 20 Texas, 718; Smith v. Sherwood, 2 Texas, 460. Culbertson v. Cabeen, 29 Texas, 247; Reed v. Samuels, 22 Texas, 114; Hammond v. Belcher, 10 Texas, 271; Brown v. Tyler, 34 Texas, 172; Harris **v.** Findburg, 46 Texas, 80; Carlin v. Hudson, 12 Texas, 202.

*R. W. Stayton, Glass & Callender* and *Stockdale & Proctor,* for appellee: A contract which provides for the payment of stipulated interest from the date of notes thereafter to be executed, and which, in fact, were not executed, draws interest from the time when, from the true constructions of said contract, the notes were required to be executed. (Farr v. Ward, 3 M. & W., 25; Boyce v. Warburton, 3 Camp., 450; Becher v. Jones, 2 Camp., 472.)

Liens may be created by contract, which may stipulate the mode in which the lien shall be effectuated, continued or rescinded, and the intent of the parties must prevail unless prohibited by law. (4 Wait's Actions and Defenses, title Liens.)

The contract being in writing and recorded, created a lien in itself, as soon as the first herd or any part of it was delivered and received by appellant.

Even if the fact were true that appellee had agreed to waive any lien given by the contract upon the cattle he sold to appellant, this would only be a partial waiver, and could not affect his right to the lien and the enforcement of the same on the residue of the property.

A buyer can not take a double course; he can not, while claiming damages for breach of contract as regards quality, yet detain and exercise ownership over goods which he claims he ought to reject. His course is to put his refusal to accept said goods plainly before the seller, and rid himself of the custody of the goods. (2 Schouler on Pers. Prop., 407, 408; Story on Sales, sec. 405; Treadwell v. Powell, 39 Conn., 31; Delameter v. Chappell, 48 Md., 244; Bartholomae v. Paull, 18 W. Va., 771; Wellaer v. Fellows, 48 Wis., 105.)

It is always permitted to show by extrinsic evidence the subject matter referred to in the written contract. (Roberts v. Short, 1 Texas, 381; Bradley v. The Steam Packet Company, 13

Peters, 99; Anson on Contracts, pp. 236, 237; 1 Greenl. on Ev., sec. 287; 1 Wait's Act. and Def., p. 127, sec. 20.)

Evidence is admissible of the usage of a trade or locality which may add a term to a contract, or may attach a special meaning to one of the terms. (Epperson v. Young, 8 Texas, 135; Adoue v. Seeligson, 54 Texas, 605; G., H. & S. A. R'y Co. v. Henry & Dilley, 65 Texas, 691; Fenner v. Bank of Columbia, 9 Wheat., 588; Lamb v. Klaus, 30 Wis., 94; Hutton v. Warren, 4 M. & W., 475; Dana v. Fielder, 62 Am. Dec. (12 N. Y., 40); 1 Greenl. on Ev., secs. 292, 294, 288, 298.)

It is only necessary that such usage be so far established and so far known to the parties, as to render it probable that their contract was made in reference to it. (Slipperly v. Stewart, 50 Barb., 62; Gallup v. Ledens, 1 How., 282; Farmer's National Bank v. Sprague, 52 New York, 605; Wells v. Bailey, 49 New York, 464; Partridge v. Forsythe, 29 Alabama, 202; Alabama Railroad Company v. Kidd, 29 Alabama, 226; Price v. Walsh, 9 Alabama, 563; Patton's Adm. v. McGrath, 31 Amer. Dec., 552; Wait's Actions and Defenses, vol. 1, p. 127, sec. 20.

The words "good merchantable cattle" in a contract to sell the same with a provision for future delivery, should not be construed as a warranty of soundness and quality on the part of the seller, but rather as a description of the class of cattle to be tendered and accepted, and inserted for the guidance of the seller in gathering and delivering said cattle, and the buyer in accepting or rejecting the same at the time of delivery. (Leonard et al. v. Davis et al., 1 Black, 476; Erwin v. Maxwell, 3 Murphy, 241; 63 Am. Dec.; Benjamin on Sales, 499; Story on Sales, 361; 5 Wait's Actions and Defenses, p. 555.)

Under a contract containing such terms, the buyer would have the right, at the time of delivery, to reject all cattle that did not come up to this standard; but after accepting and treating them as his property, he can not be heard to complain. (Leonard et al. v. Davis et al., 1 Black, 476; Benjamin on Sales, second edition, 360, 534.)

When an express warranty is contended to cover latent defects unknown to the seller at the time of sale, such warranty should clearly appear. (2 Schouler on Personal Property, section 334; Kingsbury v. Taylor, 29 Me., 508 (1 Am. Dec., 607); Hadley v. Clinton, 13 Ohio, 502; Lord v. Grow, 29 Conn., 88, (80 Am. Dec., 504); Frazier v. Harvey, 34 Conn., 469; Parkinson v. Lee, 2 East, 314.

The maxim *caveat emptor* is a cardinal rule in the law of purchase and sale of personal property. It has never been attempted to be qualified further than to require the seller to exercise good faith toward the buyer, and to take no advantage of matters peculiarly within his knowledge to defraud him. (Jones v. George, 56 Texas, 149; Mitchell v. Zimmerman, 4 Texas, 80; Wintz v. Morrison, 17 Texas, 372; Love v. Berry, 22 Texas, 371; Demming v. Foster, 42 N. H., 165; Cherneel v. Bowman, 2 Ct. App. Civil Cases, Texas, 114; 2 Schouler on Personal Property, secs. 343, 345; Benjamin on Sales, 2 ed., page 524; Blackstone's Com., Cooley's ed., book 3, page 457; 2 Kent's Com., 478, 482.)

The vitiating elements in a contract of this nature are the willful and reckless fraud of the seller brought home to him, and the deception of the buyer thereby. (Wintz v. Morrison, 17 Texas, 384; Blythe v. Speak, 26 Texas, 434; Broom's Legal Maxims, 791; Anson on Contracts, 123 to 128 inclusive; Benjamin on Sales, 338, 362, 367, 368.)

The true rule is that upon the sale of a specific article present and subject to an intelligent examination on the buyer's behalf, no warranty of its quality or fitness for a particular use will be implied. (Mitchell v. Zimmerman, 4 Texas, 75; Slaughter v. Gerson, 13 Wallace, 379; Demming v. Foster, 42 N. H., 165; Frazier v. Harvey, 34 Conn., 469; Seixas v. Wood, 2 Carnes Rep., 48; Hyatt v. Boyle, 5 Gill & John., 25 Am. Dec., 110; Hart v. Wright, 17 Wendell, 267; 2 Kent's Com., note A, p. 621.)

GAINES, ASSOCIATE JUSTICE. This suit was brought by appellee to recover of appellant the price of five thousand three hundred and eighty-four head of cattle delivered by appellee to appellant, under a contract in writing, in substance as follows: Appellee agreed to sell and deliver to appellant "eight thousand head of mixed yearlings (steers and heifers), all to be good, merchantable cattle," in three herds, the first herd to be delivered May 15, 1885, and the other two as soon thereafter as practicable; in consideration of which appellant agreed to pay appellee eight dollars per head for the cattle so delivered, and for the purchase money so promised, to execute to appellee his promissory note payable on or before a date twelve months after the delivery of the first herd, the notes to bear twelve per cent per annum interest from date, and to be secured by a

mortgage upon certain lands and cattle belonging to appellant, and also upon the cattle so sold.

Appellee alleged in his petition the delivery and acceptance of five thousand three hundred and eighty-four cattle, under the contract, and a tender of two thousand six hundred and sixteen yearlings, such as were called for in the contract, and appellant's refusal to accept the latter. He also alleged appellant's failure to pay for the cattle received by him, and his refusal to execute the note and mortgage stipulated for in the agreement. He prayed a judgment for the purchase money of the cattle delivered at the contract price, with interest at twelve per cent per annum from the time of the delivery, and for a decree enforcing the lien upon the property described in the agreement.

By the first assignment of error it is complained that the court erred in overruling defendant's exception to so much of the petition as sought to recover the conventional interest of twelve per cent. The fourteenth assignment is to the effect that the court erred in charging the jury to allow interest at the stipulated rate. These are based upon the proposition that because the contract was not fully consummated, and the notes were not given, interest at the rate agreed upon could not be recovered; but the proposition is not sound. The plaintiff alleged an offer fully to comply with the contract on his part, and the defendant's refusal, and clearly the measure of his damages as to the cattle delivered and accepted was the contract price and interest at the rate and from the date set forth in the agreement. (Heidenheimer v. Ellis, 67 Texas, 426; I. C. Savings Bank v. Sachtleben, Id., 420.)

It is also complained that the court erred in not striking out, upon defendant's exception, so much of the petition as sought to enforce a lien upon the property therein described. This assignment is not well taken. The plaintiff averred a substantial compliance with the contract upon his part. This entitled him to have it enforced according to its terms to the extent that defendant had actually received cattle under it. A written agreement to give a mortgage, with which the party entitled thereto has complied, is treated in equity as a mortgage, and will be enforced as such between the parties to the original transaction. (Texas Western R'y Co. v. Gentry, decided at this term.)

. Defendant pleaded in his answer that after the execution of the contract plaintiff agreed that he could sell or ship a portion of the cattle upon which the mortgage was to be executed, and also that plaintiff, after the delivery of the second herd, never delivered or tendered the additional cattle required for the completion of the contract on his part, and claimed that thereby the lien was waived and discharged. Exceptions to these allegations were sustained by the court, and the ruling is assigned as error. It is undoubtedly true that if a party who has a lien upon property consents to an absolute sale of the property, and it is accordingly sold, the lien is thereby waived as to so much as is sold, but it does not follow that if he consents to a sale of a part of it merely, that he relinquishes his lien upon the part to the sale of which he did not consent, or upon so much of it as is not actually sold. The defendant does not allege any consideration for plaintiff's agreement that he might sell or ship the cattle, and we think it clear that the agreement was not binding, and that plaintiff did not thereby waive his right to a mortgage as to any of the property which was not actually disposed of by his permission. As to so much of the answer as claims a discharge of the lien by reason of plaintiff's failure to deliver the full number of cattle, this is to be said: that if he did make such failure it was defendant's right to tender back the cattle and claim a rescission of the contract: he can not hold the cattle already delivered under the agreement without paying according to its terms. To hold that he can retain what he has already received, and be held to account merely for the value as a simple debt discharged of any lien, would be to hold the plaintiff to a contract to which he never agreed. If he has suffered damage by plaintiff's failure, his damages would be a proper subject of counter claim, and could be set off against plaintiff's demand.

In regard to the third assignment of error, it is sufficient to say that it does not appear, from the allegations of the answer, which are there brought in question, that the losses there claimed by defendant were in the contemplation of the parties at the time the contract was entered into. (Pacific Express Co. v. Darnell, 62 Texas, 639.) The inference from the averments is that the contract to deliver a part of the cattle to Shiner & Williams was made after the execution of the contract with plaintiff; so that, in our opinion, the latter would not be liable for any damage incurred by defendant by reason of his failure

to make a timely delivery to them, although such failure was caused by plaintiff's dereliction in failing to make delivery according to the terms of his agreement with defendant.

It was urged by defendant below, and is insisted here, that the second herd of cattle delivered by plaintiff were not in accordance with the terms of the contract, and that he should not be compelled to pay for the same according to the contract price. He admits, however, that he received the cattle, though under protest; claiming that he was forced by the exigencies of his business to take the cattle for delivery upon contract with third parties which he then had outstanding. But if the cattle tendered him were not such as were called for in his agreement with plaintiff, and he knew this, he should have rejected them. When a purchaser under an executory contract for the sale and delivery of personal property inspects the same before delivery, he is estopped to set up that it is not such as the seller has agreed to deliver, so far as all visible defects are concerned. His mere protest, in the face of his acceptance, amounts to nothing. If the property is not such as his contract calls for, he can refuse to receive it, and sue for such damages as he has suffered by the breach of the agreement. He must take the property under the contract or not at all. What we have just said we think sufficient to dispose of appellant's fourth, ninth, sixteenth and seventeenth assignments of error, so far as the purposes of this opinion render such disposition necessary.

During the progress of the trial the plaintiff was permitted, over objections by defendants, to prove by persons engaged in the cattle business that, when a contract is made between cattle men in that section for the delivery of "yearlings," they are expected to deliver cattle born at any time from the first of January to the first of June of the previous year; and that, by the custom of the country, in the term yearlings, cattle from ten to fifteen months old were included, provided their average age was one year. In the admission of the evidence we think there was no error. It is apparent that it would be impracticable for any one to deliver, on a day certain, a thousand or more cattle, each one of which should be precisely twelve months old, and that therefore, in a contract of this character, the term yearlings can not be literally applied. Some deviation must be allowed from the literal import of the word, and, if the limits are not prescribed in the contract itself, the custom of the coun try and trade, when such custom exists, may be appropriately

resorted to in order to define its meaning. Such a custom is reasonable and is usual in most branches of commerce. The objections to the testimony were, first, because the word was not ambiguous; second, "because parol evidence of custom was not admissible to vary a written contract," and third, "because proof of such custom as was alleged in the petition would add the word 'average' to the written contract." These objections were not well taken. The court's charge upon this subject was in accordance with the views we have expressed, and, in our opinion, was not erroneous.

In the nineteenth and twenty-first paragraphs of his answer, defendant sought to claim damages for the wrongful suing out of the writ of injunction. These parts of the answer were excepted to and the exceptions sustained, and the ruling of the court thereon is assigned as error. In support of the ruling, appellee asserts that damages for the wrongful issue of a writ of injunction can only be recovered after the injunction has been dissolved either in whole or in part. It may be that if there was no other ground for reversal of the judgment—the injunction having been perpetuated—the ruling of the court upon this matter might be deemed harmless. But if the proposition be that a defendant in a suit in which an injunction has been wrongfully issued can not set up for damages growing out of the abuse of the writ, we can not assent to it. But it is not clear upon what ground the defendant claims that the writ was wrongfully issued in this case. His contention that plaintiff had no lien, can not be maintained. The agreement that he might sell, was without consideration and can not be held to operate as a waiver of the stipulation in the contract to give a mortgage. As long as the lien exists, defendant could not lawfully sell more than the equity of redemption in the property which was subject to it. Hence it is not seen that he could have been damaged by being restrained from doing that which he had no right to do. If the averments in the pleas in reconvention had shown that the lien had been discharged, or that defendant owed plaintiff nothing under the contract sued upon, they would have presented a case which would have entitled defendant to damages. But this, as we construe them, they failed to do, and we therefore conclude that the court did not err in sustaining the exceptions.

The twelfth and thirteenth assignments of error present the most important question in the case, and will be considered together. They are as follows:

12. "The court erred in his third charge in instructing the jury that the defendant could not recover for cattle that were diseased at the time of delivery, and afterwards died of said disease, unless the plaintiff knew at the date of delivery that they were so diseased, and in not charging as requested by defendant in his fourth charge asked, that plaintiff was liable, if by use of reasonable diligence he might have known they were so diseased before delivery.

13. "The court erred in instructing the jury in his third charge, that "upon the sale of animals where both buyer and seller inspect the animals, and they are then and there infected with a latent disease unknown to both parties, if the animals afterward die of disease, the loss falls upon the buyer and not the seller, unless the latter has given a special warranty to the former," and in not charging as requested by defendant in his second charge that the words "good merchantable yearlings in the contract are a special warranty condition."

The contract stipulates for the delivery of "good merchantable cattle." The defendant introduced evidence which tended to show that at the time the cattle were delivered they were infected by a disease which was not discoverable by inspection, and that by the reason of this disease many of them died. This applies both to the cattle which were sold by defendant to Shiner & Williams, and those which he retained in his own pasture. The question is: If the cattle were affected with a latent disease when they were delivered and this was known to neither party, must defendant bear the loss which resulted from the unsoundness? It is insisted on behalf of appellee, that the rule of *caveat emptor* applies in its full force and that he is not responsible, while appellant claims that the words "good merchantable" imply a warranty, and that plaintiff must make good his loss from the disease. These words are descriptive of the cattle to be delivered, but can hardly be held to imply a warranty in its technical sense. The distinction between representations which are held to warrant an article and words which merely describe property which is contracted to be sold, is clearly recognized in Jones v. George, 61 Texas, 345, and is sound in reason and supported by the authorities which are there cited.

The buyer may accept an article sold with a warranty, though he may know it is not such as is warranted, and may

recover damages for the breach. But if there be no warranty and the article tendered be not such as is described in the contract, and this be known to the purchaser, he must either refuse it and rescind the contract or accept it and abide by the agreement. If, however, the property be not such as is described, and the defect be such as can not be discerned by the exercise of reasonable care, and the buyer do not discover it until he has made such disposition of the property that he can not return it to the seller, then he may recover his damages by reason of the seller's failure to comply with the terms of his contract. (Jones v. George, supra.) This brings us to the question, what is meant by the words "good merchantable cattle" in the contract under consideration? Do they mean cattle which at the time of the delivery were merely in such condition and of such appearance as to be salable? or do they mean cattle which were not only salable but sound? If the word "merchantable" stood alone, the question would be more difficult, but even in that case it might seriously be doubted whether cattle infected with a latent disease which was likely to be developed in a short time, could be declared merchantable for the purposes indicated in this contract. It was probably not contemplated by the parties to this agreement, when it was entered into, that the cattle would be immediately sold. The credit which was extended and the lien which was retained, are inconsistent with that idea. But at all events it is our opinion that some meaning must be attached to the word "good," and that we must interpret the contract as if it read "good and merchantable cattle."

Can live stock which are infected with a disease, though it be not discernable by a buyer upon inspection, be said to be "good" in any proper sense of that term? We think not. The word is very comprehensive in its meaning, and as applied to cattle bought for purposes of breeding and sale implies freedom from existing disease. In Moore v. Morris, 20 Illinois, 255, the meaning of the word "good" in the phrase "good current money," came up for determination, and it was there held that the phrase meant not merely money which was good as currency, but money which was good under the Constitution and the then existing laws, namely such gold and silver coins as were then a lawful tender. So here we hold that the contract in this case calls for the delivery of cattle not simply good for the purposes of sale, but also good in fact; that is to say, for

cattle inherently sound.   We therefore conclude that the court erred in giving and refusing instructions, as appellants complain in the assignments under consideration.   For these errors the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered March 27, 1888.