FLORIDA ATHLETIC CLUB ET AL. V. HOPE LUMBER COMPANY.

Delivered January 15, 1898.

**1. Pleading—Certainty—Paper in Another's Possession.**

A petition which declares upon a contract and alleges that certain plans and specifications formed a part of it, is not defective for failure to set them out, where it avers that they are in the possession of the defendant.

**2. Damages—Measure of—Market Value.**

The measure of damages where the vendor delivers personal property which is not in quality such as is stipulated for in the contract, is not the difference in the market value at the time of the delivery between the goods delivered and the price, but the difference in the market value of the goods as delivered and as contracted for.

**3. Evidence as to Value and Quality.**

Evidence given by the manager of a lumber company, plaintiff in a suit for material furnished, which is defended on the ground that it was of inferior quality, that upon the approval of the lumber furnished by the architect of the defendant, he

Vol. XVIII. Civil—11

had paid a third party therefor, and more than he could otherwise have paid, is inadmissible.

**4. Sale—Acceptance—Visible Defects.**

A purchaser of lumber under an executory contract who, after an opportunity to examine the lumber is afforded, accepts it upon delivery, can not thereafter complain as to visible defects therein, but will be held for the contract price, although it was intended for an amphitheater to be completed by a certain date and accepted under a press of necessity.

**5. Practice—Court and Jury.**

It is a question for the jury whether at the time lumber was delivered a mutual agreement was entered into between the parties that the question whether the lumber furnished came up to the requirements of the contract should be arranged after delivery.

**6. Same—Burden of Proof.**

The burden of proof is upon one who asserts a conditional delivery of goods in avoidance of the legal effect of the acceptance.

**7. Estoppel—Acceptance by Architect.**

That the architect and superintendent of a building proposed to be erected personally inspected lumber delivered in connection with the manager of the lumber company and declared it satisfactory, does not estop those in whose behalf the architect acted from afterwards asserting that the material furnished was unsuitable and of inferior quality.

**8. Arbitration and Award.**

An agreement in an executory contract to refer matters of dispute arising thereunder to a designated person for arbitration will not oust the courts of jurisdiction; but an award made in a proceeding in conformity with such a provision, in the absence of fraud or mistake, is valid, and a subsequent suit must be brought on the award, and not on the contract.

**9. Same—Court and Jury.**

Whether there was an arbitration between parties and an award previous to the institution of a suit is a question of fact for the jury.

**10. Evidence of Value.**

In an action to recover the contract price of lumber sold and used in the construction of an amphitheater, where the defense is that it was of inferior quality, evidence as to what the lumber sold for after the structure was taken down is inadmissible to prove its value at the time of its delivery.

**11. Same.**

Testimony as to the dimensions of lumber delivered under a contract is inadmissible when the defense to the action is that it was not of the grade or quality stipulated.

APPEAL from Dallas. Tried below before HON. R. E. BURKE.

*W. J. J. Smith, I. R. Oeland,* and *W. P. Ellison,* for appellants.

*Harris, Etheredge & Knight,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was filed by the Hope Lumber Company, plaintiff, against the Florida Athletic Club, and others, defendants, for the recovery of a balance alleged to be due under a certain contract to furnish lumber and for certain extra lumber furnished and labor performed. Said contract was originally made and entered into between plaintiff and the Dallas Lumber Company, but said contract, before the filing of this suit, was assigned by the Dallas Lum-

ber Company to plaintiff. Plaintiff alleged that on August 5, 1895, the Dallas Lumber Company entered into a written contract with the defendants whereby it agreed to furnish and deliver to the defendants between August 15, 1895, and September 15, 1895, in and near Dallas, Dallas County, Texas, "all and singular the lumber necessary, as shown in the bill or schedule attached to said contract (which is hereto attached and can not be made a part hereof), and approximating one million feet or less, as might be required for the erection and completion of an amphitheater building in the county of Dallas, Texas, according to plans and specifications made by E. H. Silven, architect for such building," which were in the possession of the defendants, and on that account a more particular description thereof could not be given. That by the terms of the contract defendants agreed to pay for the same at the rate of $10 per 1000 feet, one-half to be paid on delivery, and the balance—one-half on September 1, 1895, and the remainder on November 1, 1895. That under said contract plaintiff delivered to the defendants the lumber of the kind and quality prescribed in said contract to the amount of 1,118,343 feet, and charging $15 per 1000 feet for 9884 feet, instead of $10 per 1000, on account of extra work done at the request of defendants, and that plaintiff, at the special instance and request of the defendants, performed other extra work on said lumber in sawing the same to short lengths. That defendant made certain payments under said contract, but failed and refused to pay the balance due thereunder, for which this suit was brought. Plaintiff further alleged that defendants used a large portion of said lumber after the same was delivered in erecting said amphitheater building; that afterward defendants tore down said building, and that at the time of the filing of this suit said lumber was upon the ground where the same had been delivered. That within less than four months after the indebtedness accrued under the contract plaintiff filed a certain mechanic's lien on said lumber. At the time of the filing of the petition plaintiff filed a sequestration bond and affidavit and caused a writ of sequestration to be levied on the lumber so delivered by it, and then on the ground at Dallas, as alleged in said petition.

Defendants demurred generally to the allegations contained in plaintiff's petition: and specially excepted to said allegations, because it appeared therefrom that the suit was on a written contract, and referred to plans and specifications, and yet failed to set forth said plans and specifications, or the substance thereof, and failed to allege that they were unable to produce said plans and specifications, whereby defendants were not fully advised as to plaintiff's entire cause of action. Defendants also filed general denial; and specially answering, alleged that if plaintiff ever held such contract as the one described in his petition, that said contract, among other things, provided: "Should any dispute arise between the parties hereto as to the full compliance by the said Hope Lumber Company of all things by them to be performed under this agreement, then the said E. H. Silven shall be the final arbitrator of any

such dispute, and his decision shall be final of any such matter." That in the settlement of the questions between the said parties, a dispute arose as to whether the plaintiff had furnished lumber in accordance with and up to the quality and grade provided for in the contract. That such dispute was referred to said E. H. Silven in accordance with the provisions of the contract, and said Silven rendered a decision, that on account of defects in the lumber the defendants were entitled to a reduction of 20 per cent from the original contract price, whereby these defendants would only be indebted to plaintiff in the sum of $506.58, which amount the defendants were then ready and willing and offered to pay.

Defendants further specially plead that it was provided in said contract, and in the specifications which were made a part thereof, that the lumber to be furnished thereunder was to be "No. 1 mill run, Texas pine of first class quality, free from large knots or shakes that would impair its strength or durability, and must be approved by the superintendent;" that for such described lumber these defendants were to pay the consideration of $10 per 1000 feet; that plaintiff never did deliver the lumber of the kind and quality specified in the contract, except as to the item of 9884 feet at $15 per 1000 feet, to which defendants offered no objection. That of the lumber delivered, about 250,000 feet was of a lower grade and quality and value than the quality to be delivered, and was in truth and in fact only of the value of $8 per 1000; that the balance of said lumber, to wit, 858,343 feet, was absolutely worthless and useless to defendants, and was not reasonably worth more than $5 per 1000 feet; that same was warped, bent, distorted, rotten, weather beaten, full of knot holes that destroyed its strength and utility; that it was not of the specified length, which rendered it useless, and on account of being sappy said lumber was almost useless for any purpose. That by reason of the failure of the plaintiff to furnish the lumber in accordance with the terms of the contract, and defendants having already paid the sum of $8409.35, they were not indebted to plaintiff in any sum whatever. That the consideration of the conveyance had wholly failed, and that they did not then owe to plaintiff any sum of money, unless it be the sum of $506.58, the amount due by the award of E. H. Silven, arbitrator; and further alleged that the award of said Silven was a just award, free from bias and prejudice, and that the same was binding and conclusive on the questions at issue in said suit.

On November 28, 1896, plaintiff filed its first supplemental petition in answer to defendants' amended answer, denying each and every allegation of same; and among other things, specially alleged that all the differences and controversies between the parties had been fully settled and adjusted by the allowance to the defendants of a credit of $99.88, and that by said allowance all differences and disputes between them were conclusively settled, and that there therefore remained no dispute or differences for the adjudication of said E. H. Silven; and further specially alleged that it furnished and delivered to defendants, at Dallas,

within the time specified in the contract, lumber of the grade and quality and value as specified in its original petition, and that said lumber was received by defendants according to the usage and custom of the trade, and defendants made reclamations against the plaintiff for shortage in the lumber shipped, but made no objection to grade or classification, and thereby waived such objections, if any, and that afterwards and long before the institution of this suit, such reclamations and differences had been adjusted, and that defendants have now no right to reopen such settlement, as the plaintiff had settled with other mills for certain lumber purchased by plaintiff to fulfill said contract, all of which was well known by defendants, wherefore defendants were estopped to allege that said lumber was not of the grade and quality contracted for. Plaintiff further specially replied, that after the receipt of the lumber by the defendants, and while the same was still open to examination and inspection and capable of being easily classed and graded, plaintiff having heard a rumor that there was objection made to the grade and quality of the lumber, sought an interview with the defendants for the purpose of having the same adjusted before the lumber was used; and thereupon by united arrangement between the plaintiff and defendants, plaintiff's agent and defendants' agent went together where the lumber was situated for the purpose of there examining and inspecting the lumber and determining whether it was of grade and quality in compliance with the contract, and of settling and adjusting any differences there might be on the subject; and the said Silven then and there, as agent for the defendants, after a full and complete inspection and examination of the lumber, stated and declared to the plaintiff's agent that the lumber would be accepted, and that it fully complied with the contract; and thereupon defendants made payments, as alleged in plaintiff's original petition, without further objection or dispute, and thereafter removed over 700,000 feet of the lumber and used same in the erection of the amphitheater, cutting same up into various sizes and lengths and so altering and disfiguring the same as to render it almost impossible to determine its original grade and quality. That thereafter, when the prize-fight had been abandoned and defendants had no further use for the lumber, they again, for the first time, began to raise objections as to the grade and quality of the lumber supplied, and proposed to pay plaintiff its account, less $1000. And then in December, 1895, for the first time, suggested that E. H. Silven, the arbitrator, had decided the plaintiff had not complied with its contract. Plaintiff further alleged that if said Silven ever made or attempted to make any award same was void, because said Silven at the time of making the same was pecuniarily interested with the defendants, and was actuated by fraud and undue influence, and that said award was grossly and outrageously excessive.

Plaintiff also alleged that the agreement for submitting to the arbitration of E. H. Silven was revoked before he made any award, if any, and notice duly given to said defendants and the said Silven.

On November 28, 1896, defendants filed their first supplemental

answer, demurring generally to the allegations in plaintiff's supplemental petition; and specially excepted, wherein is set forth a custom among millmen to the effect that reclamation should be made within ten days after the receipt of the lumber; and denied all and singular the allegations of said supplemental petition. And further specially answering said supplemental petition, alleged that the time within which the contract was to be fulfilled was limited, as was then and there well known to plaintiff. That plaintiff furnished about 300,000 feet of lumber at the beginning of the contract period; that plaintiff was notified both by wire and person that the lumber did not come up to the kind and quality specified in the contract. That plaintiff delayed furnishing the lumber until up to a short time within which the lumber could be furnished for the purpose intended by defendants, as was well known to plaintiff; that within the time allowed other lumber could not be obtained from other parties within the State of Texas; that plaintiff delayed the delivery with the express purpose and intention of forcing the defendants to accept the said lumber; that defendants, on account of this fact, were forced to receive the lumber; that they received it under protest, and protested at all times that the lumber did not come up to the contract, by reason of which they were not estopped to allege that the lumber was not in quality and kind such as had been contracted for.

Trial of the cause before a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $3123.91, principal and interest, with foreclosure of lien on the property levied upon, from which judgment this appeal was duly prosecuted.

*Opinion.*—Appellant's first assignment of error complains of the action of the court in overruling the exceptions to the petition, to the effect that the petition was defective in failing to set out the plans and specifications made a part of the contract, it appearing from the contract, which was made a part of the petition, that there were plans and specifications, and that they were not set out in the petition.

The pleadings of plaintiff showed that there were plans and specifications, and alleged that they were in the possession of the defendants. The petition set out facts sufficient to excuse plaintiff from making the plans and specifications a part of the petition. The court did not err in overruling defendants' exceptions to the petition.

Appellants' third assignment of error complains of the measure of damage laid down by the charge of the court. The court charged the jury that if the lumber sold and delivered was not substantially as contracted for, and was not in quality, grade, and dimensions such as was contracted for, then plaintiff would be entitled to a verdict for the difference, if any, between the reasonable market value in Dallas of the lumber at the time it was delivered and the price contracted to be paid. This is not the correct measure of damage. The true rule for the measure of damages, where the vendor delivers personal property which is not in quality such as is stipulated for in the contract, is the difference

in market value at the time of the delivery between the goods actually delivered and the goods contracted to be delivered. Stark v. Alford, 49 Texas, 274; Wright v. Davenport, 44 Texas, 164.

Appellants' fourth assignment of error complains of the following proposition contained in the charge of the court, to wit: "If you find that Silven, as the architect and superintendent of the building proposed to be erected, went to the grounds where the lumber was delivered, near the fair grounds, and after all had been delivered, in company with one Harle, the manager and representative of the plaintiff company, and then and there inspected the lumber, and announced to Harle that it was satisfactory and would be received by him; and afterwards this lumber so inspected was used by defendant company in constructing the amphitheater building; and you further find that Harle, as such manager of plaintiff company, relying upon such announcement, if any, so made by Silven, proceeded to pay to other parties for some of this lumber purchased by plaintiff company, and to replace lumber to others from whom he had borrowed to fill this contract, then, if you find this to be the case, the defendant company would be estopped from now setting up a failure of the lumber to come up to the requirements of the written contract."

The contract called for 1,000,000 feet of lumber, more or less, to be delivered f. o. b. (free on board cars) on the railroad switch of the Texas & Pacific Railroad most convenient to the building site in or near Dallas, as desired by said Silven and his associates. There was evidence that plaintiff purchased 210,000 feet of the lumber from Lancaster Bros., and 70,000 feet from W. L. Sloan. Defendants knew nothing of this fact. J. W. Harle, agent for plaintiff, testified that Silven, the architect, told him after the lumber was delivered that the lumber was satisfactory and that the lumber would pass, and that on the strength of this statement he settled with Lancaster Bros. and Sloan. He says he would not have made this settlement had not Silven approved the lumber.

We do not think the facts were sufficient to constitute an estoppel. The basis upon which an estoppel in pais rests is actual or constructive fraud. Page v. Arnim, 29 Texas, 70. The party who invokes the estoppel must have acted in ignorance of the true state of facts. Steed v. Petty, 65 Texas, 490; Bigelow on Estop., 1 ed., 480.

The act done or statement made which is invoked as working an estoppel must have been sufficient to induce the party claiming the benefit of it to act thereon, and relying thereon, he must have been induced to change his position for the worse. Scoby v. Sweatt, 28 Texas, 730.

In this case, Harle, plaintiff's agent, was in possession of the facts. It does not appear but that plaintiff would have paid Lancaster Bros. and Sloan had not the statements been made by Silven. It does not appear that either Lancaster Bros. or Sloan sold plaintiff the lumber to be paid for upon the same passing inspection by Silven, or that the plaintiff was to pay these parties upon defendants' acceptance of the lumber.

Appellants further complain, in their eleventh assignment of error, of the action of the court in overruling their exception to the evidence of the witness J. W. Harle, that he paid said Lancaster Bros. and Sloan upon the faith of the approval of the lumber by Silven, because there was no evidence showing that the defendants at any time knew or had notice that plaintiff had bought or borrowed any lumber from Lancaster Bros. or Sloan to fill their contract with the defendants, or that the defendants at any time had reason to believe that plaintiff would act upon any such alleged representations of Silven in settling for any such contracts with Lancaster Bros. and Sloan. We have already said this evidence was not sufficient to show an estoppel. We think the court erred in admitting this evidence.

It is contended by appellants, in effect, that if they did accept the lumber and make use of the same, they did so under a press of necessity, and that the lumber was purchased for a specific purpose—the building of an amphitheater, which was to be completed by a certain date—and that there was not sufficient time to procure this quantity of lumber from other sources, and that plaintiff had notice of these matters, and that Harle, agent of plaintiff, promised that the matter should be adjusted, and that the lumber was received under protest and under this promise. This is stating appellants' contention as favorably as the record will justify.

The contract for the sale and delivery of the lumber was an executory one. The title to the lumber did not pass until there was a delivery. The contract stipulated that the lumber was to be "No. 1 mill run, Texas pine, of first-class quality, free from knots or shakes that would impair its strength or durability." There was no other provision in the contract as to the grade or quality of the lumber. We understand the rule to be that where there is a sale of personal property to be delivered, and no express warranty that would survive delivery, upon the delivery with an opportunity to examine the same, and an acceptance, the vendee can not complain as to visible defects therein, but will be held for the contract price. Parks v. O'Connor, 70 Texas, 387; Seay v. Dillen, 16 S. W. Rep., 642: 21 Am. and Eng. Enc. of Law, pp. 560, 562; Norton v. Dreyfus, 106 N. Y., 90; 2 Schouler on Per. Prop., secs. 406, 407; Jones v. McEwan, 16 S. W. Rep., 81; Tiedem. on Sales, sec. 115; Smith v. Mill Co., 6 S. W. Rep., 225; 2 Benj. on Sales, sec. 690. And this is true, although at the time he protested that the property was not of the kind and quality contracted for. Parks v. O'Connor, supra.

Nor would the fact that the defendants were induced to accept the lumber by stress of time and their inability to procure lumber within the time desired by them relieve them from the legal effect of receiving the lumber, if they did receive it. The contract being executory, it was their privilege to refuse to receive the lumber if it failed to comply in quality with that stipulated for in the contract, and to hold the plaintiff responsible for such damages as they suffered by the breach of the same.

Parks v. O'Connor, supra; Seay v. Dillen, supra; Tiedem. on Sales, sec. 117.

The cases of Wright v. Davenport, 44 Texas, 165, and Stark v. Alford, 49 Texas, 261, referred to by counsel for appellants, were suits upon commercial paper executed for the balance of the purchase money for machinery sold and delivered upon an express warranty. The contract was executed, and not executory as in the case before us, and the warranty was not to survive delivery. The rule laid down in those cases is not applicable to the case at bar.

But it is contended by appellants that they were induced to receive the lumber by reason of a promise of an agent of the plaintiff that the question as to the quality should be arranged after delivery. As already stated, the contract did not contain any warranty as to visible defects that would survive acceptance of the property. If, however, there was a mutual agreement between the parties that the question as to whether the grade or quality of the lumber came up to the requirements of the contract should be held in abeyance and settled after the delivery of the lumber, then the defendants would not be bound by the acceptance of the same. The burden of proving such an agreement is upon the party asserting the same. The mere promise to supply better lumber in the future on the contract, after part of the lumber had been delivered, would not prove such an agreement. As to whether or not there was such an agreement between the parties is a question of fact to be determined by the jury from the evidence upon the trial.

For the reasons above stated, we sustain appellants' fourth assignment of error, but overrule their fifth and eleventh assignments in part and sustain them in part.

Appellants' sixth assignment of error reads: "The court erred in the fifth paragraph of its charge, in which the jury are instructed that the decision of Silven, architect, of any dispute or disagreement between the parties as to the quality and grade of lumber sold and delivered, should be final and binding on both parties only when such dispute or disagreement was mutually submitted by the parties to the said Silven, because the terms of the contract in reference to such decision in such case does not require that any such dispute should be mutually submitted by the parties."

The contract contained the following clause: "Should any dispute arise between the parties hereto as to the full compliance by the Dallas Lumber Company of all things by them to be performed under this agreement, then the said E. H. Silven shall be the final arbitrator of any such dispute, and his decision shall be final of any such matter."

It is contended by the appellee that the above clause of the contract is void, because it confides to the determination of the arbitrator every dispute arising as to the full compliance by the said Dallas Lumber Company of all things by them to be performed under the agreement or contract.

The distinction is to be noted between a contract providing for the

certificate of an architect, where the work is executed under his general superintendence, as to the amount of work done from time to time, and stipulating the amount to be paid by the owner, and the stipulation in the contract sued upon.

In the former case, the procuring of such certificate is held to be a condition precedent to the right to sue on the contract. Childress v. Smith, 90 Texas, 616; Boettler v. Tendrick, 73 Texas, 492; Wright v. Meyer, 25 S. W. Rep., 1122. It will be seen that the clause of the contract above quoted makes E. H. Silven the final arbitrator of any dispute between the parties, and provides that his decision shall be final of any such matter.

It has been held that an agreement in an executory contract to refer all matters of dispute that may arise under the contract to arbitration will not oust the courts of jurisdiction. Insurance Co. v. Bass, 90 Texas, 380 (38 S. W. Rep., 1119); Canal Co. v. Coal Co., 50 N. Y., 258; Kinney v. Baltimore, etc., Assn., 15 L. A. R., 142, and note; 2 Am. and Eng. Enc. of Law, p. 582, et seq.; Insurance Co. v. Hucking, 2 Am. St. Rep., 562, 566, 568, and notes.

Some of the decisions hold that such a clause in a contract is void. See cases cited above, and especially cases cited in note 2 Am. St. Rep., p. 568.

The true rule seems to be that such a clause can not oust the courts of jurisdiction, and when invoked for that purpose will be held void; yet, if the parties have, before suit is instituted, proceeded with the arbitration under the contract, and an award, in the absence of fraud or mistake, has been made, suit must be on the award, and not on the contract.

If there was a dispute between the parties, and they, acting under the contract, fairly submitted the matter to an arbiter, and he, acting under the contract, made an award, such an award, in the absence of fraud or mistake, would be binding upon the parties. As to whether there was an arbitration between the parties and an award previous to the institution of the suit, is a question of fact, to be determined by the jury from the evidence, upon a proper charge.

We do not think the court erred, as set forth in appellants' tenth assignment of error, in refusing to admit the testimony of plaintiff's witness, B. F. Loyd, on cross-examination by the defendants, that he bought part of the lumber back from appellant for $4 per 1000 feet after the lumber had been made use of by appellants in the amphitheater and the structure torn down and the lumber had been piled up some time. The evidence was not admissible to prove the grade of the lumber at the time it was delivered to appellants.

We do not think the court erred in refusing to admit the evidence of the witness Waller, made the basis of appellants' twelfth assignment of error. The lumber had been used by appellants in building the amphitheater. The building had been torn down and the lumber placed in piles, exposed to the weather. Shortly thereafter, part of the lumber

was taken back or resold to plaintiff. Its condition at that time was not shown. The evidence offered was to the effect that in this purchase plaintiff would only accept a 4x10 piece as a 3x10 piece. This evidence was offered to show that at the time the lumber was delivered by plaintiff to the defendants (appellants), it did not come up to the grade or quality specified in the contract. The same witness had testified fully as to the grade and quality of the lumber when it was delivered by plaintiff to defendants. The evidence offered only tended to show as an inference that the lumber was not of the dimensions specified in the contract. Appellants did not contend in the court below that the lumber was not of the dimensions called for, but that it was not of the grade or quality stipulated for in the contract. The court did not err in excluding this testimony.

We have intentionally refrained from discussing the evidence in view of another trial. For the errors pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*