WALTER M. GORHAM v. DALLAS, CLEBURNE & SOUTHWESTERN RAILWAY COMPANY.

Decided February 10, 1906.

**1.—Breach of Contract—Special Damages—Pleading.**

To entitle the defendant company to recover from plaintiff on its plea in reconvention the damages which said company was obliged to pay to the contractors by reason of its failure to make prompt delivery of the material to said contractors, it was incumbent on the said company to plead and prove that at or before the execution of the contract sued on plaintiff had notice of the particular purpose for which the material was intended, and the probable consequences of a failure to make prompt delivery of the same.

**2.—Bargain and Sale—Inspection—Estoppel.**

A purchaser of personal property, under an executory contract for its sale and delivery, who inspects the same before receiving it, is estopped, as to patent defectives, from denying that it was of the character bargained for; and it matters not that at the time of receiving it he did so under protest; nor that he was compelled to accept and use it to prevent certain forfeitures.

ON REHEARING.

**3.—Substitution of One Article for Another—Market Value.**

It appearing from the evidence that the defendant did not accept the splice bars in lieu of the angle bars contracted for, but used the same under the promise of plaintiff to do what was right in the matter, it would only be liable for the reasonable market value of such as it used.

**4.—Pleading—Exceptions.**

Where the pleading is fairly susceptible of two intendments, on special exception that will be adopted which is most unfavorable to the pleading. In the absence of a special demurrer, and when tested by a general demurrer the pleading will be given the most reasonable intendment in favor of its sufficiency.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*Davis & Davis,* for appellant.—The court erred under the findings of the jury in rendering judgment for the defendant on its cross bill against the plaintiff for damages, because the law under the findings of the jury does not raise the presumption that when the parties closed said contract for the material that such damages were in contemplation of the parties or either of them. Hooks Smelting Co. v. Planters' Compress Co., 79 S. W. Rep., 1052 to 1060, and cases therein cited; Globe Refining Co. v. Landa Cotton Oil Co., U. S. Sup. Ct., 47 L. Ed., 1172-3-4.

The jury finds that the plaintiff delivered to the defendant 3,090 pairs of angle-bars and the undisputed evidence shows that the defendant received and used same, and the contract fixed the price at $1.00 per pair, and the undisputed evidence shows that only $1,525 had been paid, which left a balance of $1,565 due plaintiff on angle-bars without reference to 1,000 pairs of fishplates. Parks v. O'Connor, 70 Texas, 387; Scott Lumber Co. v. Hafner-Lothman Manuf. Co., 65 N. W. Rep., 514-5; Benjamin on Sales (7th ed.), sec. 644; Skidmore v. Scobee, 85 S. W. Rep., 1088; Denwiddie v. Nash, 86 S. W. Rep., 517-8, and Ed. note, Mechem on Sales, 1391.

Under the contract the defendant was bound to accept the material or reject the same when presented to it, and having received said material and having used it, the defendant was bound to pay the contract price and not the market value, and the court erred in receiving evidence of its market value.

Before the plaintiff can be held liable to the defendant for any damages that it may have sustained by reasons of its failure to comply with its contract with Daugherty & Davis by reasons of plaintiff's delay in delivering the said material to the defendant, it must be shown that at the time the defendant and plaintiff closed their contract that defendant had not only informed plaintiff of its contract with Daugherty & Davis, but it must be shown that the defendant had given the plaintiff definite information that if plaintiff failed to deliver said material on time it would likely suffer damages by reason of its contract with Daugherty & Davis, and have shown him approximately what such damages would be, and gave the plaintiff to fully understand that the defendant expected to hold the plaintiff liable to it for any and all damages it might sustain by reason of its failure to comply with its contract with Daugherty & Davis, by reason of any failure on the part of the plaintiff to comply with his contract with the defendant. Hooks Smelting Co. v. Planters' Compress Co., 79 S. W. Rep., 1052 to 1060, and cases therein cited.

*James W. Brown, Brown & Bledsoe* and *Ramsey & Odell,* for appellee. —The evidence disclosing that the concessions and allowances made by the appellee to its contractors in respect to the construction of its road were of the value of $3,500, and being concessions to which under the evidence the said contractors were entitled, and these concessions and allowances being for damages by reason of the delay in furnishing material, for which appellant was responsible, recovery can be had there-

for by appellee herein. Under the foregoing and other propositions, cited: Strain v. Pauley, 80 Texas, 622; Bounds v. Hickerson, 63 S. W. Rep., 887; Saunders Ex. v. Weekes, 55 S. W. Rep., 33; Seay v. Diller, 16 S. W. Rep., 643; Redlands Orange Growers Assn. v. Gorman, 54 L. R. A., 718, and authorities cited; Chatham v. Jones, 69 Texas, 744; Schweickhart v. Stuewe, 5 Am. St. Rep., 190; Halsted Lumber Co. v. Sutton, 26 Pac. Rep., 444; Watson v. Gray, 28 Pac. Rep., 527; Saunders v. Weekes, 55 S. W. Rep., 33.

The evidence showing and the jury having found that the fishplates (as well as the angle-bars) had been received only on the promise and assurance of appellant to do what was right in respect to the same and correct any errors on his part, and it appearing that the full value of the same had been paid to appellant by the appellee before the institution of this suit, the court did not err in not allowing the appellant one dollar per pair for the fishplates. Florida Athletic Co. v. Hope Lumber Co., 18 Texas Civ. App., 161.

BOOKHOUT, ASSOCIATE JUSTICE.—Walter M. Gorham brought this suit in the District Court of Johnson County against the Dallas, Cleburne & Southwestern Railway Company, a corporation incorporated under the laws of Texas, alleging: That plaintiff resided and was doing business in Philadelphia, Pennsylvania, under the name of Henry Levis & Co., and that defendant was engaged in operating a line of railroad from Egan, in Johnson County, to Cleburne, in said county, and that its general office was located at Cleburne, Texas, and that W. D. Myers was its president, and resided in Kansas City, Missouri; that its secretary and treasurer, W. A. McDonald, resided in Johnson County, Texas.

That about the twenty-second day of August, 1902, the plaintiff entered into the following contract with the defendant: "Philadelphia, August 22, 1902. Sold to the Dallas, Cleburne & Southwestern Railway Company for the account of Messrs. Henry Levis & Company of Philadelphia, sufficient relaying steel T rails to lay eleven (11) miles of single track, approximately nine hundred and sixty-eight (968) tons, original fifty-six (56) pounds to the yard, and the necessary accompanying angle bars, thirty-two ($32) dollars per gross ton for rails and one ($1.00) dollar per joint complete (consisting of two angle plates and bolts and nuts) both f. o. b. Kansas City, Mo. Shipment to be made immediately. Material to be subject to Hunt's inspection at buyer's cost. Terms of payment—cash against sight draft with shipping documents attached, payable in New York funds at par.

This contract to be guaranteed by the endorsement of a reputable bank. Signed in duplicate.

John B. Waston.

Accepted:   Dallas, Cleburne & Southwestern Railway Company,
per W. D. Myers, Prest."

That in compliance with said contract plaintiff submitted to Hunt & Company, inspectors, for defendant's inspection, all the material called for in said contract, including rails, bars and joints complete with bolts and nuts, etc., that the same was inspected by Hunt & Company, through their agent or employe, and as agent and inspector of

the defendant; that the defendant through its agent and inspector as aforesaid selected and inspected, passed and accepted, from the material presented by plaintiff as aforesaid the amount of material called for in said contract, and pointed out to plaintiff or his employes the material so selected and inspected as the material he had inspected and accepted as the material called for in said contract. That the plaintiff then and there had the material so inspected and passed by the defendant's inspector loaded in cars and billed to Egan, Texas, as required by said contract.

Plaintiff averred that all of said material was paid for by the defendant, save and accept two thousand five hundred and sixty-five pairs of anglebars or joints, with the accompanying bolts or nuts, for which the defendant, by said contract, agreed to pay the plaintiff $1 per joint, consisting of a pair of angleplates with the necessary bolts or nuts, and that for said material defendant owes plaintiff $2,565, and has failed to pay the same; and that by the terms of said contract the defendant was to pay all freight, but that at the special instance and request of the defendant, plaintiff paid two amounts of freight, towit: $53.12 and $56.44, whereby defendant became liable and promised to pay plaintiff said two sums; that though requested so to do, defendant has failed to pay same. Plaintiff prays for judgment for $2,565 and $109.56, with six percent interest from October 30, 1902.

The answers consist of a general demurrer, denial, and special answers and cross-bill. The defendant, in its special answer, says that in the summer and fall of 1902, it was engaged in constructing a line of railroad from Cleburne to Egan, in Johnson County, Texas; that it and others, whose right it held, had agreed with sundry persons of Cleburne and elsewhere to build said railway by the first of January, 1903; and in consideration of building said railway by said time, said sundry persons had executed their notes for about $30,000, and that it had secured franchises and right of way and other rights to about $25,000; and that if it had failed to complete said railway by the first day of January, 1903, it would have lost about $60,000; that the defendant had contracted with Daugherty & Davis on or before it made the contract with plaintiff set out in plaintiff's petition, to build said railway and complete same, defendant to furnish them the material set out in such contract, and that the plaintiff knew at the time he made said contract that the defendant's road had been graded, and that the defendant was buying said material to be delivered to said contractors to be laid on said roadbed; with all of said facts before him plaintiff entered into said contract to deliver said material to defendant f. o. b. Kansas City, Missouri, for immediate shipment; that the inspection of Hunt was to be under the direction and control of plaintiff, and not the defendant, and that all the defendant had to do with the inspection was to pay reasonable charges therefor; to have immediate shipment was a part of the consideration of said contract. That in consideration of the immediate delivery of the material, defendant paid greatly in excess of the real value of said material. Defendant says that said material was not delivered immediately; and that five hundred pairs of fishplates in the place of anglebars were delivered to it at Egan, and that it refused to accept same.

The defendant says that relying on the obligation of the plaintiff to ship said material immediately, the defendant had contracted with said contractors to furnish them all of said material and that by the contract with the contractors they were to begin work July 15, 1902, and finish same in ninety days. That defendant's contract with said contractors, bound it to deliver said material to it in time to enable them to complete said railroad in ninety days from July 15, 1902; that said contractors employ a great number of hands at great expense, skilled in laying tracks, who were compelled to remain idle for about thirty days at great expense to said contractors, to their damage, for which this defendant was compelled to compensate said contractors; and for which it did compensate said contractors. That in consequence of such delay by the default and misconduct of the plaintiff, and his failure to comply with said contract, defendant became compelled to and did pay in allowances and reasonable concessions and payments to its contractors the sum of $3,500 which sum was reasonable, and made necessary by the default and wrong of the plaintiff in the manner above set out, wherefore and whereby defendant was damaged in the sum of $3,500.

The plaintiff on January 6, 1905, filed his first supplemental petition which contained a general denial, a special exception to all that part of defendant's answer which set up and claimed damage by reason of acceptance of certain material which it put in its track, which it alleged it had to remove from said track, as same is too remote. A special exception which excepted to all that part of said answer which pleads as damages, that its workmen were delayed, etc., because such damages do not arise out of the contract, and are too remote. A general denial, and statute of limitation of two years to all of defendant's damages. That all the material was second hand and was subject to defendant's inspection; that it was the duty of the plaintiff to present said material to defendant's inspector before it was loaded for inspection; that the plaintiff did so and presented said material and that the same was inspected, and passed by the defendant's inspector, and that the same was then loaded and billed to Egan, Texas; that defendant is estopped from claiming any damages by reason of defects in said material. That it had inspected same and that any defects complained of were open and visible; and defendant knew of same before it used same, and is now estopped from claiming damages; that defendant accepted and used all of said material and is now estopped. That if there was any delay in the shipment of said material, it was brought about by defendant's delay in having said material inspected; that if defendant did not receive all of said material, the same was inspected and delivered to the railroad and billed to the defendant, and that it was bound to look to the railroad for same.

The case was tried before a jury on special issues. Judgment on the verdict was entered that the plaintiff take nothing, and that defendant recover of plaintiff on its cross-bill $3,500. From this judgment plaintiff prosecutes an appeal.

*Opinion.* The plaintiff under the name of Henry Levis & Company, sold to the Dallas, Cleburne & Southwestern Railway Company

sufficient relaying T. rails to lay eleven miles of single track and the necessary accompanying anglebars, at $32 per ton gross for the rails, and $1 per joint complete, each joint consisting of two angleplates and bolts and nuts, to be delivered free on board the cars at Kansas City, Missouri, and to be subject to Hunt's inspection at buyer's cost. For which payment was to be made by the railway company in cash, against shipping documents attached, payable in New York funds at par. This material was inspected by Hunt & Company in September and October, 1902, and passed by them as proper and suitable material for the purposes for which it was intended. The material, after inspection, was loaded on the cars and billed to the Dallas, Cleburne & Southwestern Railway Company at Egan, Texas. The inspection was made in the yards of the Wabash Railroad at Moberly, Missouri. The first shipment of rails arrived at Egan, Texas, October 6, 1902, but no anglebars were received until October 13, 1902.

At the time of making the contract sued on the defendant railway company, had a contract with Daugherty & Davis, whereby they were to construct the road for the company from Egan to the town of Cleburne. By the terms of this contract the railway company was to furnish at Egan, Texas, all material for the construction of the said railroad. The contractors were to begin work not later than July 15, 1902, and to complete said railroad on or before ninety days from said date, unless hindered on account of bad weather or failure of the company to procure right of way. The work was to be done under the directions of the chief engineer and if disapproved by him to be done over. Estimates were to be made by the engineer on the 10th of each month, and the contractors were to be paid on such estimates. The final estimate was to be made within thirty days after the completion of all the work, which estimate is to be final and conclusive on both parties. The chief engineer is made the final arbiter between the parties. The jury found that the plaintiff had knowledge at and before the execution of the contract sued on of the contract between defendant and Daugherty & Davis, that defendant was to furnish the material to construct said railroad and the probable loss that might result to the railroad company, if plaintiff failed to deliver said material as stipulated in the contract for immediate shipment. The jury further found there was due the defendant from plaintiff, by reason of the delay in the shipment of the material contracted for, $3,500, and judgment was entered against plaintiff for this amount. This judgment is assailed as being without pleading or evidence to support it. A careful examination of the appellee's pleadings fails to disclose any specific allegation in its cross-bill to the effect that plaintiff had notice at or before the contract was executed, that the railway company had a contract with Daugherty & Davis, whereby they were to construct its tracks between the city of Cleburne and the town of Egan, and that said railway company was to furnish the material for its construction or sustain the losses that might result from a failure to make prompt delivery of the material. To entitle the railway company to recover damages sustained by it by reason of its failure to make prompt delivery of the material to Daugherty & Davis, it was incumbent upon its part to plead and prove that at or before the execution of the contract

sued on plaintiff had notice of the particular purpose for which the material was intended by the railway company and the probable consequences of a failure to make prompt delivery of the same. Pacific Express Co. v. Darnell, 62 Texas, 639; Jones v. George, 61 Texas, 349; Hadley v. Baxendale, 9 Exch., 353. The appellee sought to show that by reason of the delay in receiving the material the employes of Daugherty & Davis, consisting of eighty-five men, who were receiving on an average of $1.50 per day, were laid off at different times to await the arrival of material. There being no pleading as a foundation for the admission of such evidence the judgment based thereon can not stand. Nor does the evidence show that at or prior to the time of making the contract sued on, the plaintiff had notice of the contract between defendant and Daugherty & Davis, and the necessity of a prompt delivery of the material to meet the requirements of that contract, and the probable consequences of a failure to make such delivery. The evidence does show that plaintiff, prior to the execution of the contract sued upon, had notice that certain valuable bonuses and franchises depended upon a completion of the railroad by January 1, 1903. But the evidence fails to disclose that plaintiff at that time had any notice of the contract between Daugherty & Davis or the terms of the same. To make plaintiff liable for the special damage insisted upon, notice of that contract must have been brought home to him at or prior to the execution of the contract, so as to make it reasonably certain that he consented to be bound for more than ordinary damages in case of default on his part. Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S., 540. Again, the evidence in our opinion was insufficient to justify a finding that the appellee had sustained damages in the amount of $3,500, by reason of its failure to make prompt delivery of the material to Daugherty & Davis. H. A. Genung, chief engineer for the defendant, testified: "In the settlement between the contractor and the railway company, the railway company on account of the fact that the contractors were threatening the railway company with damage suits and other trouble on account of the delays that they had been put to on account of the company's failure to make proper and timely delivery of the material to be used in the construction of its line, the railway company was compelled to allow the contractors quite a sum of money to cover the time that the contractors had been delayed. I do not know what amount was allowed the contractors, but it was quite a sum. In addition to this, in a settlement between the railway company and the contractors the railway company had to accept the track from the contractors in a bad condition on account of the defective material so furnished it by Henry Levis & Company, which is set down above. In other words the railway company was compelled to accept the track in the defective condition and release the contractors on their bond, and then put the track in a suitable condition and bear the expense. From the knowledge I have of the condition of the track when taken over by the railway company from the contractors, and the condition it should have been in according to their contract between the parties, I should say that the damage occasioned to the railway company by reason of the defective material furnished by Levis & Company at least amounted to $3,500. In making

this estimate I have taken into consideration all the facts and circumstances surrounding the whole transaction, and I believe the same to be a reasonable estimate. Of the unsuitable material used in the construction of this line of railway, as testified to above, it was necessary to take out two and a half miles of nuts, bolts and splices; in order to do this work we required the services of eight men for two weeks; these men were all paid the sum of $1.50 per day. This sum so paid these men was a reasonable charge and payment for such services."

B. P. McDonald, general manager of appellee, testified: "I was sent a final estimate from the engineer as to the work done and came down to inspect it. I found it not completed in accordance with our contract, and I declined to pay Daugherty & Davis, the contractors, anything further until they had finished the road. I think that was about the time the road was completed, about or just before December 22. Later I came down to settle with Daugherty & Davis, I think in January. They had threatened to sue me unless I paid them. I listened to their complaints and I insisted that the work was not in accordance with the agreement. They insisted that they had put it up several times in accordance with the agreement and on account of the delays they ran into wet weather and had to refit it up, cleaning out ditches, etc., and that they had lost heavily on account of delays of material, and unless I paid them they would sue me or the company. I concluded that if they did sue the company they would recover and collect the money and I paid them $3,500 more than I thought we owed them." On cross-examination he testified: "The amount due the contractors, Daugherty & Davis, as estimated by the engineer, was $3,500; it did not show that the road had been completed according to the contract. All the work they ever did was done up to that time; that was the last estimate made by our engineer. The engineer said under the contract we were due them that sum. The engineer was made the final arbitrator of myself, or the company, and Daugherty & Davis. I paid them the amount that the man we had agreed upon to make the estimates said was due them under the contract. Yes, now I come here and tell the court and jury that was paid as damages, and that it was not due. I don't know whether the engineer simply took into consideration the work or not in making his estimate; I suppose he took into consideration the work that was done." This is all the material testimony on this issue.

The contract between appellee and Daugherty & Davis having provided for the payments to the contractors to be made on estimates furnished by the engineer, and the testimony of McDonald showing that the payments made by him were on such estimates, the railway company should not now be heard to say that such estimates were for damages and not for work done by them under the contract. It is not claimed that there was any fraud on the part of Genung in the matter of making the estimates.

2. The evidence shows, and the jury found, that plaintiff delivered under the contract three thousand and ninety pairs of anglebars and one thousand pairs of fishplates. This material, by the terms of the contract, was to be subject to Hunt's inspection and the evidence shows

it passed such inspection. The appellee insists that it was not to be inspected, but that the contract only contemplated inspection of the rails. The contract stipulated that the material was to be inspected, and this was material for constructing the track. It is further insisted by the appellee that the contract provides for the sale of angle-bars, and that instead of delivering anglebars the plaintiff delivered one thousand fishplates, which are inferior to anglebars. Where the property delivered is not such as described in the contract of sale, and this is known to the purchaser, he must either refuse it and rescind the contract, or accept it and abide by the agreement. Parks v. O'Connor, 70 Texas, 390, top of page. These plates passed inspection and were delivered to, accepted and used by the railway company. But appellee insists that the jury found that the inspection of the material was not fairly and honestly made, but was collusive and fraudulent. We are of the opinion that the evidence is wholly insufficient to support this finding. There was evidence of an inspection, and there was evidence that some of the anglebars when they reached Egan, were defective and that sixty-two pairs were unfit for use, and that twenty-five pairs of fishplates were unfit for use. That many of the nuts were defective, and that the company had to take up two and a half miles of square nuts that were used in the construction of the line. That four hundred and eighty-four pairs of splicebars or fish-plates were used, which were at some later date, taken up and anglebars used in their place. It is apparent that the defects in the anglebars, fishplates and nuts were patent at the time the railway company received the same. The contract is without warranty. The material having been inspected by the parties agreed upon in the contract of sale, and having been accepted and used by the appellee, it will not in a suit for the contract price, be heard to say that the material was not in accordance with the agreement. A purchaser of personal property, under an executory contract for its sale and delivery, as is the contract in this case, who inspects the same before receiving it, is estopped, as to patent defects, from denying that it was of the character bargained for, and it matters not that at the time of receiving it he did so under protest. Parks v. O'Connor, 70 Texas, 387; Florida Athletic Club v. Hope Lumber Co., 18 Texas Civ. App., 161; Benjamin on Sales (7th ed.), sec. 644. But appellee contends it was induced to accept the anglebars and fishplates by the promise of the plaintiff to do what was right in respect to this matter and that the jury so found. This contention is based upon certain communications between the parties. On October 21, 1902, the defendant sent the following message by wire to plaintiff: "Why are you sending us fishplates? We did not contract for them." To this plaintiff replied:

October 23, 1902.

"Mr. Myers engaged Robert Hunt & Co., Chicago, to look after your interest. We were not advised until yesterday that Hunt had accepted plain bars, but we will do whatever is right under the circumstances. In the meantime please pay the draft, as all the material to cover eleven and a half miles has been shipped and paid for by us. Suggest that you take the matter up with Hunt."

On November 1, 1902, plaintiff wired defendant: "Amount draft $4,484.55. Have you bank remit $3,484.55, leaving $1,000 for one thousand pairs of splices to be adjusted." And again, on the same date, plaintiff wrote defendant as follows: "We have telegraphed you this morning, requesting that you will have your bank remit us at once check for amount of our last invoice, less $1,000 to cover the plain splicebars shipped, which please give your immediate attention." None of the communications refer to anglebars, and the court ought not to have submitted to the jury the question whether defendant was induced to accept the anglebars on the faith of plaintiff's promise to do what was right in respect to the matter. It may be that if the defendant was induced to accept fishplates in lieu of anglebars, by the promise of plaintiff to do what was right in the matter, then the defendant would only be liable for the market value of fishplates. But the evidence shows that the agreement between the parties stipulated for an inspection by Hunt & Company and that such inspection was made and that the inspectors accepted splicebars in lieu of anglebars. The evidence of Genung shows that the company received and accepted some of the fishplates or splicebars, as early as October 13, 1902, and the first complaint made is the message of October 23, 1902.

The inducement on the part of Levis & Company for the making of the promise seems to have been the payment of the draft drawn by them on defendant, and this was not paid. The defendant did not in its pleading aver what was right and proper in the matter of the splicebars so furnished. They performed the same purpose as anglebars. Defendant made use of them and it seems some of them were accepted and used by defendant before it made the complaint of October 23, 1902. It did not offer to return the splicebars, but kept and used the same. Under these facts we are of the opinion that defendant became bound to pay the contract price for these splicebars, they having passed inspection and defendant having accepted the same in lieu of anglebars.

But the appellee argues that it was compelled to accept and use the material to save valuable bonuses and franchises, which were promised and granted it on condition of the completion of the road by the first of January, 1903. A similar contention was made in the case of Parks v. O'Connor, above cited, and overruled by the Supreme Court, 70 Texas, 387.

The jury found that the plaintiff had delivered three thousand and ninety pairs of anglebars and one thousand pairs of fishplates and that the fair market value of the anglebars, fishplates and nuts and bolts, was $1,525, and as the evidence showed that this amount had been paid to plaintiff on these items they found defendant was not owing anything for this material. The action of the court in submitting such issue was erroneous and the jury's finding thereon could not be made the basis of the judgment.

3. The court failed and refused to submit to the jury the demand of plaintiff for $109.56, freight prepaid by plaintiff on certain of the material, notwithstanding plaintiff prepared and presented an interrogatory asking the submission of this issue. In support of this demand plaintiff testified as follows: "I paid freight on bolts and nuts amount-

ing to $109.56, as follows:   On October 17, 1902, $53.12; December 27, 1902, $56.44.   This freight was paid because the destination point was a prepaid station, and the railroad company at Kansas City would not receive the material for shipment until the freight was paid.   The same has not been paid."   This evidence is not controverted.   This sum was paid by plaintiff as freight for the benefit of defendant on material from Kansas City, Missouri, to Egan, Texas, which the contract contemplated should be paid by the defendant.

4.   We are of the opinion that the contention of plaintiff that there was error in the admission of the testimony of the witnesses, H. A. Genung and B. P. McDonald, above quoted, is well taken.

The damage resulting to defendant by reason of its failure to make prompt delivery of the material to the contractors, Daugherty & Davis, is not the proximate result of a breach of the contract sued on, and before the defendant could recover the same it was necessary to plead that plaintiff had notice at the time of the sale of the material that defendant had such contract and the particular purpose for which the material was intended, and the probable consequences of his failure to make prompt delivery.   This it did not do.   Again, this testimony was the opinion and conclusion of the witnesses, and for this reason it was not admissible.

There are various assignments challenging the action of the court in submitting certain issues and in refusing to submit certain special issues requested by appellant.   There are other assignments complaining of the admission of evidence.   Under our view of the case it does not become necessary to pass upon the same.   We conclude that the court erred in rendering judgment for defendant on its cross-bill and that under the findings of the jury on the issue as to the number of anglebars and splicebars delivered, and the uncontroverted evidence, the court should have, entered judgment for plaintiff for three thousand and ninety anglebars and one thousand splicebars at the contract price of $1 apiece, making $4,090, less $1,525, paid thereon, leaving $2,565, and $109.56, freight paid by plaintiff for the use and benefit of defendant, making a total of $2,674.56, and as the facts have been found by the jury and those not found are uncontroverted, this court will render such judgment as should have been rendered by the trial court. The judgment in favor of the defendant on its cross-bill is reversed and set aside and judgment is here rendered for appellant for $2,674.56.

*Reversed and rendered.*

### OPINION ON REHEARING.

We are inclined to the opinion that we were in error in holding that appellee "became bound to pay the contract price of these splicebars, they having passed inspection and defendant having accepted them in lieu of anglebars."   The contract called for anglebars, and it is evident that the delivery of splicebars would not meet its requirements. To hold the defendant liable for the splicebars or fishplates, as a fulfillment of the contract, the evidence must show that defendant received the same in lieu of anglebars.

In addition to the evidence set out in the opinion the motion for rehearing calls our attention to the letter of C. C. Nelson, vice-president of the railway company, dated October 21, in which he says: "I am just in receipt of a wire from my engineer stating that some fishplates have arrived there. He states that it is possible that he can use some of them in siding, so we will hold them there if you say so, and use what we can of them, but must have sufficient anglebars for the main track. If you want us to use the fishplates it will be necessary for you to instruct the agent to deliver us these bars as they are shipped to your order." To this letter the appellant replied on October 24, as follows: "Your favor of the 21st instant is at hand this morning. We were quite as much surprised as you could be to know that something like one thousand pairs of splicebars had been shipped. Our contract with you read 'anglebars,' as does our contract with shippers. We note that you state you must have anglebars for your main track, but that you can use a portion of these plain bars on your sidings . . . you can rest assured whatever is right on this question of splicebars will be done. In taking up this matter with shippers we have simply stated in our telegram that they have shipped one thousand pairs of plain splicebars which should be angle, and that we must insist on their replacing them with angles."

The statement of facts is voluminous and these letters escaped our attention when the opinion was written. It is clear that the contract not having called for splicebars the defendant did not become bound to pay for the same by reason of the fact that they passed Hunt & Company's inspection. It does not appear that Hunt & Company had knowledge of the terms of the contract. This correspondence shows that the railway company did not accept the splicebars or fishplates in lieu of anglebars, but upon the clear understanding that it was to do what was right in the matter. Such understanding or agreement would only have the effect of making the railway company liable for the market value of the same, or at least so many of them as it made use of.

We are also of the opinion on a careful examination of the pleading that we were in error in holding that the allegations in appellee's cross-bill were not sufficiently specific. The allegations in the cross-bill, as to the notice to plaintiff of the terms of the contract between the railway company and its contractors, Daugherty & Davis, and the particular purpose for which the material was intended and the probable consequence of a failure to make prompt delivery, are general. An exception styled a special exception was filed by appellant and we so considered it when the opinion was written. In the motion for rehearing it is contended that said exception is in effect only a general exception. On a careful examination we so construe it. Where the pleading is fairly susceptible of two intendments on special demurrer, that will be adopted which is most unfavorable to the pleading. Camp v. Gainer, 8 Texas, 372; Vielma v. International & G. N. Ry. Co., 31 S. W. Rep., 212; Gulf, W. T. & P. Ry. v. Montier, 61 Texas, 122. In the absence of such special demurrer, and when tested by a general exception the pleading will be given the most reasonable intendment in favor of its sufficiency. Rule 12, 94 Texas, 670; Whetstone v.

Coffey, 48 Texas, 271. Testing the allegations in the cross-bill by the rule last announced the same are sufficient. The main opinion is modified as herein set forth.

It follows that we were in error in rendering judgment in favor of appellant. The motion for rehearing is granted and the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*