## EASTON v. DOZIER.†

(Court of Civil Appeals of Texas. Ft. Worth. May 4, 1912. Rehearing Denied June 1, 1912.)

1. APPEAL AND ERROR (§ 1032*)—REVIEW—HARMLESS ERROR.

The action of the trial court in improperly putting defendant's agent under the rule as a witness is not ground for reversal, where no injury to defendant is shown.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4047–4051; Dec. Dig. § 1032.*]

2. SALES (§ 288*) — REMEDY OF BUYER — WAIVER OF DEFECTS.

Where the buyer of cattle accepted them with knowledge that they were not of the grade represented, the defects being apparent, that acceptance was a waiver of the seller's breach; mere representations as to the quality of the cattle not amounting to a warranty which would survive after acceptance.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 817–823; Dec. Dig. § 288.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by Ed Dozier against N. L. Easton. From a judgment for plaintiff, defendant appeals. Affirmed.

Harris, Harris & Young, of Ft. Worth, for appellant. Bryan & Spoonts, of Ft. Worth, for appellee.

DUNKLIN, J. Ed Dozier and N. L. Easton, the latter acting through his agent and representative, B. F. Thomason, entered into a parol contract, by the terms of which Dozier agreed to sell to Easton 1,700 head of steers. The purchase price which Easton agreed to pay for the steers was $30 per head, and on the date of the contract of purchase he paid to Dozier $3,400 in advance, and agreed to pay the balance of the purchase price upon delivery of the cattle. Before this agreement was made, Thomason

inspected quite a number of the cattle, the herd being then on Dozier's ranch near Paint Rock. The agreement was made during the latter part of November, 1909, and, by its terms, the cattle were to be delivered to Easton at Brady on or about December 6, 1909, when the balance of the purchase price was to be paid to Dozier. At that time and place Dozier delivered to Thomason 1,606 head of steers, which Thomason then shipped to Ft. Worth, at which place Easton sold them. At the contract price of $30 per head, the price of the 1,606 head amounted to $48,-180, of which amount Easton paid $41,438, but refused to pay the balance. Dozier instituted this suit to collect that balance, and from a judgment in his favor Easton has appealed.

[1] By the first assignment of error complaint is made of the action of the trial judge in placing B. F. Thomason under the rule as a witness during the progress of the trial. The basis of this contention is that, as Thomason was the person who represented appellant in the trade made with Dozier and who received the cattle at Brady, he should have been excused from the operation of the rule. Appellant admits in his brief that ordinarily such rulings are within the discretion of the trial judge, but insists that the ruling complained of in this instance was, under the circumstances stated, an abuse of that discretion. However, no injury to appellant is shown or attempted to be shown by. the ruling, and this fact of itself is a sufficient reason for overruling the assignment now under discussion.

[2] Stated briefly, the defense urged by Easton was that the cattle were of a different kind and of inferior quality and value to such cattle as Dozier represented the cattle in question to be. Easton introduced evidence in support of this defense, which testimony was controverted, in the main, by the testimony of Dozier.

A further issue was made by the pleadings and the evidence of the parties, as follows: Easton contended that the cattle were accepted by Thomason under an agreement between him and Dozier at the time, that the cattle were not in compliance with the contract, and that, if Thomason would accept and ship them, he, Dozier, would rebate the contract price thereof in proportion to their failure to prove as represented. In reply to that contention, Dozier testified, in effect, that there was no such agreement between himself and Thomason when the cattle were delivered at Brady, but, to the contrary, Thomason, after inspecting the cattle in the stock pens at Brady, accepted them as being in compliance with the contract; that plaintiff, at Thomason's request, cut back and did not deliver 100 head of said cattle; that he, Dozier, offered to Thomason to rescind the entire contract of sale if Thomason was not satisfied with the cattle,

which offer Thomason rejected; that later Easton, after receiving the cattle at Ft. Worth, promised to pay plaintiff the contract price therefor, and made no complaint that the cattle were not as plaintiff had represented them to be at the time the trade was made. It was proven beyond controversy that Thomason did see and inspect the cattle at Brady before accepting them. The following appears in the court's charge to the jury: "If you believe from the evidence in this case that the steers tendered or delivered were not as represented, but that defendant, after inspecting them and seeing them, accepted them as a compliance with the contract, and after they were sold agreed to pay plaintiff the balance due, then you will find in favor of the plaintiff." Appellant insists that the representations made by Dozier relative to the kind and quality of the cattle amounted to a contract of warranty, and that, as Easton had already paid $3,400 on the contract of purchase before his agent accepted them at Brady, his acceptance of the cattle after they were inspected and found to be below the standard represented by Dozier did not constitute a waiver of his right to claim a rebate of the contract price. If the cattle were not as represented, no contention is made that Thomason did not know that fact at the time he accepted them. His testimony was that he did make such discovery before he accepted them. The defects in the cattle, if any, were therefore visible to Thomason, and under such circumstances the alleged representations by Dozier at the time of the trade, relative to the cattle, did not amount to a warranty which would survive the delivery of the cattle to Thomason. The decision of our Supreme Court in Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104, we think is decisive of the question now under discussion, adversely to appellant's contention. In that case, as in this, plaintiff sued to recover a balance claimed to be due him for cattle he had sold to the defendant under a written contract of sale, and in the decision rendered our Supreme Court said: "It was urged by defendant below, and is insisted here, that the second herd of cattle delivered by plaintiff were not in accordance with the terms of the contract, and that he should not be compelled to pay for the same according to the contract price. He admits, however, that he received the cattle, though under protest, claiming that he was forced by the exigencies of his business to take the cattle for delivery upon contract with third parties which he then had outstanding. But if the cattle tendered him were not such as were called for in his agreement with plaintiff, and he knew this, he should have rejected them. When a purchaser under an executory contract for the sale and delivery of personal property inspects the same before delivery, he is estopped to set up that it is not such

as the seller has agreed to deliver, so far as all visible defects are concerned. His mere protest, in the face of his acceptance, amounts to nothing. If the property is not such as his contract calls for, he can refuse to receive it, and sue for such damages as he has suffered by the breach of the agreement. He must take the property under the contract or not at all." See, also, Florida Athletic Club v. Hope Lumber Co., 18 Tex. Civ. App. 161, 44 S. W. 10; Gorham v. Dallas & Cleburne Ry., 41 Tex. Civ. App. 623, 95 S. W. 551; Wigglesworth v. Uvalde Live Stock Co., 126 S. W. 1180.

By several other assignments it is insisted that the judgment is not supported by the evidence, and that the trial court erred in refusing appellant a new trial on his motion urging that as reason why such relief should be granted. As shown by the recitals of the evidence and the conclusions stated already, there is no merit in these assignments, which, therefore, are overruled.

The judgment is affirmed.