SWIFT & COMPANY, Appellant,

v.

Seth T. ROBERSON et ux., Appellees.

No. 6853.

Court of Civil Appeals of Texas.

Texarkana.

March 1, 1956.

Kenley, Sharp & Ritter, Earl Sharp, Longview, for appellant.

R. L. Whitehead, Longview, for appellees.

FANNING, Justice.

Eddie Little and S. H. Killingsworth, d/b/a Red Chain Feed Store, as plaintiffs, brought suit against Seth Roberson and wife for debt. The Robersons, defendants, claimed a set-off because of defective chickens sold to them by plaintiffs and also claimed plaintiffs failed to find a market for certain other chickens. Plaintiffs then joined Swift & Company as cross-defendant and the Robersons, defendants, amended to include Swift & Company for their loss. Trial was to a jury and the court rendered judgment for the Robersons against Swift & Company upon the verdict of the jury and Swift & Company has appealed from the judgment rendered against it. (The trial court also gave judgment for plaintiffs against the Robersons for the debt sued upon, which judgment, however, was not appealed from.)

Appellant, Swift & Company, by its first point contends that the trial court erred in not granting a take-nothing judgment in its favor upon any breach of an implied warranty of condition of the Indian River chickens. Appellant contends in this connection that the judgment against it with

respect to the Indian River chickens should be reversed and rendered in favor of appellant, because the Robersons waived any breach of warranty and are estopped to recover against Swift & Company in view of the jury's findings that the diseased condition of the chickens in question could have been discovered upon inspection at the time they were delivered, and that the Robersons had an opportunity to inspect the chickens upon delivery and that the Robersons accepted said chickens upon delivery.

The Robersons alleged that Swift & Company sold and delivered to them 2,800 Indian River chicks that were diseased, that Swift & Company knew the chicks were to be fed and marketed within ten weeks, if the chicks had been normal, healthy chicks, they would have had a reasonable market value of $1,900, but when sold had a reasonable market value of $774.74. The jury found that Bill Varnado knew the Robersons were raising the chicks for the broiler market (special issue No. 2), they relied on him to furnish chickens suitable for the broiler market (special issue No. 3), 1368 of the chicks were diseased upon delivery (special issue No. 5–A), if the chicks had matured to the age of ten weeks they would have had a reasonable market value of $1,900.00 (special issue No. 8), and when sold had a market value of $774.74 (special issue No. 8–A). Bill Varnado was an employee of Swift & Company. The jury found the diseased condition of the chicks could have been discovered upon inspection at the time they were delivered (special issue No. 7), the Robersons had an opportunity to inspect the chicks upon delivery (special issue No. 14–A), and they accepted them upon delivery (special issue No. 16–A). The trial court's judgment against Swift & Company with respect to the Indian River chickens included the difference in the sums found in special issues Nos. 8 and 8–A, viz., $1,125.26.

Swift & Company contended that they sold the Indian River chicks in question to Red Chain Feed Store under an express written warranty (which instrument also contains the signed initials "HaP" and the signature "Seth Roberson" affixed thereto) which instrument reads as follows:

"Swift & Company
Hatchery

5–1

Date  9-9-52                No. 485

Sold to ____ Red Chain Feed _____

Terms ____ Cash ____          Longview _____

| Product | Filled By | Quantity | Price | Amount | |
|---|---|---|---|---|---|
| I. R. Chix | HH | 2800 | 16½ | 462 | 00 |
| Sexed and | | 56 NC | | 28 | |
| vaccinated for New | | | | 490 | 00 |
| Castle | HaP | | | | |
| | Seth Roberson | | | | |

"We guarantee all of our baby chicks to be husky, healthy, hearty and 100% alive when delivered by us, but our obligation under the guarantee is limited to replacing all of our baby chicks (in excess of 5%) which die within the first two weeks from causes which, in our opinion, are not due to improper handling after receipt. The foregoing guarantee is expressly in lieu of all other obligations or liabilities on our part, and we neither assume nor authorize any other person to assume for us any other liability in connection with the sale of our baby chicks."

The Robersons never availed themselves of any limited rights or claims they might have had against Swift & Company by reason of the written express warranty above quoted. The Robersons never sued Swift & Company on such express written warranty and their pleadings do not mention it. The Robersons testified that they did not sign the above instrument and Mr. H. A. Parker, agent of Red Chain Feed Store, testified that he signed the initials "HaP" and the signature "Seth Roberson" on the instrument above quoted, and further testified that said chickens were delivered to the Robersons. The evidence is also undisputed that these were the identical chickens which were delivered to and accepted by the Robersons. Under their pleadings they apparently attempt to plead that Swift & Company is liable for breach of an *implied* warranty, pleading as follows:

"On or about the 9th day of September, 1952, plaintiffs and cross-defendants sold and delivered to the defendants 2,800 Indian River chicks. That the plaintiffs and cross-defendants well knew that their chicks were to be fed by the defendants, marketed within ten weeks by the defendants, at a market chosen by cross-defendants and plaintiff. That at the time said chicks were delivered they were diseased and 1,368 of said chicks died, and the balance were sold at the plaintiffs and cross-defendants advice before they were ready for the market.

That if said chicks had been normal, healthy chicks, they would have a reasonable market value in Gregg County, Texas, at the time in question of $1,900.00, but when sold were sold for only $774.74, which was the reasonable market value of said chicks at the time and place of their sale in Gregg County, Texas, to the defendants' damage in the sum of $1,125.26. Defendants would further show to the Court that the diseased condition of said chicks could not be ascertained on inspection; that the defendants have over a period of fifteen years, been in the business of raising chickens for the market; that before this instance, they had never lost over ten per cent (10%) of the chicks, and that after this matter occurred, they have since been in the broiler business, and have never lost over ten per cent (10%) of the chicks."

In 37 Tex.Jur., sec. 178, p. 401, it is stated:

"It is a settled rule in Texas that, in the absence of any express warranty, a buyer who has accepted the goods tendered him by the seller after inspection or a fair opportunity for inspection thereby becomes liable for the purchase price and is estopped, in so far as all visible defects are concerned, from asserting that they are not such as the seller contracted to deliver, and from seeking rescission of the contract or damages for its breach."

In 2 Tex.Jur., sec. 107, pp. 851–2, it is stated:

" * * * As in other cases, a seller of animals may, by contract, limit his warranty; and a warranty may not, except upon a showing of fraud, accident, or mistake in drafting or executing the agreement be varied by parol.

"While, if such an intent is clearly manifested, a special warranty on the sale of an animal may be made to cover blemishes or defects that are open and visible, it is the general

rule that, under a contract for the delivery of a certain quality of animals, a purchaser who, on inspection, accepts animals tendered in compliance with the contract, is thereafter estopped to claim, so far as visible defects are concerned, that they do not conform to the agreement; in other words, prior representations as to quality do not constitute such a warranty as will survive the delivery."

In Easton v. Dozier, Tex.Civ.App., 148 S.W. 603, 604, writ refused, it is stated:

"If the cattle were not as represented, no contention is made that Thomason [the buyer's agent] did not know that fact at the time he accepted them. * * * The defects in the cattle, if any, were therefore visible * * * and under such circumstances the alleged representations * * * at the time of the trade, * * * did not amount to a warranty which would survive the delivery of the cattle."

In Seby v. Craven Lumber Co., Tex.Civ.App., 259 S.W. 1093, 1094, no writ history, it is stated:

"The rule is well established that, where a party purchasing has a fair opportunity of inspecting, and the defects were of such a nature as could have been discovered by him by inspection, then there is no implied warranty of quality or fitness, and, in the absence of fraud, the buyer is without remedy in any character of defense or suit he might have on an implied warranty. * * * His mere protests, in the face of his acceptance, amount to nothing."

Appellee has not presented any counter-points contending that the findings of the jury with respect to special issues Nos. 7, 14–A and 16–A (the findings that the diseased condition of the chickens in question could have been discovered upon inspection at the time they were delivered, that the Robersons had an opportunity to inspect the chickens upon delivery and that

they accepted them on delivery) are not sufficiently supported by the evidence. We have carefully examined the record and we think these findings of the jury (Nos. 7, 14–A and 16–A) are sufficiently supported by the evidence in this case. We agree with appellant that the Robersons waived any alleged breach of warranty and are estopped to recover against appellant for damages with respect to the Indian River chickens. We think appellant's first point is well taken and we sustain same. In addition to the above authorities, see the following authorities: Brantley v. Thomas, 22 Tex. 270, 271; Parks v. O'Connor, 70 Tex. 377, 8 S.W. 104; Wigglesworth v. Uvalde Live Stock Co., Tex.Civ.App., 126 S.W. 1180, no writ history; Major v. Hefley-Coleman Co., Tex.Civ.App., 164 S.W. 445; W. Horace Williams Co. v. Vandaveer, Brown & Stoy, Tex.Civ.App., 84 S.W.2d 333, and Aeronautical Corporation of America v. Gossett, Tex.Civ.App., 117 S.W.2d 893.

The judgment of the trial court in so far as it awards damages to the Robersons against appellant on the Indian River chickens is reversed and judgment is here rendered that the Robersons take nothing against appellant, Swift & Company, by reason of their claimed damages with respect to the Indian River chickens.

Having held that the judgment against appellant with respect to the Indian River chickens must be reversed and rendered in its favor, we deem it unnecessary to discuss at length appellant's second and third points which deal with other questions with reference to the Indian River chickens which if sustained would result in a reversal and remand of this cause. However, we think these points are well taken and sustain same.

Appellant by its 4th and 5th points contends that the trial court erred in basing its judgment (with reference to the New Hampshire chickens in the amounts of $100 plus $1,260, total $1,360) upon the jury's answers to special issues Nos. 12–A and 12–B, because the evidence was insufficient to support such findings.

The Robersons with respect to the New Hampshire chickens pleaded as follows:

"That on October 7, 1952, the plaintiffs and cross-defendants sold and delivered to the defendants three thousand (3,000) New Hampshire chicks; that the plaintiffs and cross-defendants had promised the defendants and had prior to this transaction furnished the defendants with a market when said chicks were matured at an age of ten weeks. That this particular group of chicks at an age of ten weeks were ready to market, but the plaintiffs and cross-defendants failed to find a market for said chicks, therefore making it necessary for the defendants to keep the chicks an additional six weeks, requiring that they feed said chicks $1,260.00 worth of additional feed which would not have been necessary had the plaintiffs and cross-defendants done what they had promised to do and what they had done in the past. Defendants would further show the court that said chicks were sold for the sum of $1,700.00, which was the reasonable market value of said chicks at said time in Gregg County, Texas; that if a market had been found at the proper time for said chicks as the plaintiffs and cross-defendants had contracted and agreed to do, and had promised to do, said chicks would have brought the sum of $1,800.00, the defendants suffering a loss of $100.00 and $1,260.00 by virtue of the plaintiffs and cross-defendants' breach of contract."

The jury answered the special issues submitted with reference to the New Hampshire chickens favorably to the Robersons (as against appellant) and in accordance with the above quoted pleadings of the Robersons. The trial court entered judgment thereon in favor of the Robersons against appellant in the sum of $100 (difference in values) and in the sum of $1,260 (for extra feed), totaling $1,360.

The jury in response to special issue No. 12-A found that the reasonable cash market value of the New Hampshire chicks in controversy in Gregg County, Texas, when they were sold was $1,700. (The jury in response to special issue No. 12 had found that the reasonable cash market value of the New Hampshire chicks in controversy in Gregg County, Texas, at the time they were ten weeks old was $1,800.)

The entire testimony with reference to special issue No. 12-A was as follows:

(Testimony of Seth Roberson, appellee)

"Q. Are you familiar and were you familiar with the market value of top grade oversize chickens at the time these chickens were marketed in Gregg County, Texas? A. I was familiar at the time, yes, sir.

"Q. And did you receive the market value for them? A. No sir.

"Q. What did you receive, how much did you receive? A. I don't remember the price per pound. I can tell you the amount of money overall.

"Q. That's what I would like. A. Seventeen Hundred Dollars.

"Mr. Boyland. Your Honor, we object to that. The proper measure of damages is the market value of the chickens on that date and not what he received—

"The Court. If you'll make your objection, I'll pass on it.

"Mr. Boyland. Our objection is, your Honor, that—

"The Court. Do you make a motion with reference to this answer?

"Mr. Boyland. Yes, sir.

"The Court. Let's hear it.

"Mr. Boyland. Our objection to his testifying to what he received is that it is not material to any issue of damages as pleaded by those parties, and it is an improper way to prove up damages as alleged.

"The Court. All right, I will sustain that objection.

\* \* \* \* \* \*

"Q. And what did you receive for them when they were marketed some six weeks later? A. Seventeen Hundred Dollars.

"Mr. Boyland. Your Honor, our same objection goes to this.

"The Court. All right, I sustain the objection."

The Robersons contended that the New Hampshire chickens were marketed at a loss because the market value of said chickens declined between the time they were ready for the market and the time they were actually sold, and the burden of proof was upon them to prove this. Appellee Roberson in. his testimony above quoted stated he knew the market value of the New Hampshire chickens when they were sold, *but he never did testify what the market value was and merely testified that he did not receive the market value for them.* He testified that he received $1,700, but he never at any time testified that $1,700 or any other amount was the market value. Also objections to the testimony in question were properly sustained by the trial court. There was no other testimony from any other witness with respect to this matter.

We agree with appellant that the evidence in this cause is insufficient to support the jury's answer to special issue No. 12–A and appellant's 4th point is sustained.

We have also carefully reviewed the evidence and are of the opinion that the evidence in this cause is insufficient to support the finding of the jury in response to special issue No. 12–B, where the jury found to the effect that the Robersons had expended $1,260 for extra feed to feed the New Hampshire chicks from the age of ten weeks until they were sold.

At one place in his testimony, Mr. Roberson when asked by his counsel how much feed he had bought to feed the New Hampshire chickens in question stated: "Some, between Twelve and Thirteen Hundred Dollars worth. Around Twelve Hundred Dollars worth, I'll put it that way." (Pertinent objections were made by appellant to this testimony which were overruled. We think these objections should have been sustained.) Also in response to a question of his counsel as to how much additional feed he had to feed the New Hampshire chickens in question, appellee Roberson testified: "I don't remember just off-hand—Some—It figures around Twelve Hundred Dollars worth." (Pertinent objections were made to this testimony by appellant which were sustained by the trial court, and correctly so, we think.)

Appellee Roberson testified that since he had another job, his wife did most of the raising of the chickens. On cross-examination Roberson testified that he did not know how many sacks of feed were fed to the chickens nor how many pounds of feed were fed to them during the six-weeks period. He said he "could tell pretty close" but he never did demonstrate by any evidence that he could "tell pretty close," as he never gave or attempted to give any estimate or reasonable estimate of the number of sacks or pounds of feed fed to the chickens in question for the period in question. Mrs. Roberson, who primarily attended to raising the chickens and who apparently had more first-hand knowledge with reference to this matter than her husband, testified as follows:

"Q. You know how much feed you fed those New Hampshire chickens that are in question? A. We fed them a lot.

"Q. You know how much you fed them in pounds or sacks? You didn't keep any record if—A. You mean—I didn't keep any record—I had a record at that time but I don't have it.

"Q. Do you have it now? A. No.

"Q. Do you recall how many sacks of feed you fed those—do you have an independent recollection of how

many sacks of feed you fed those New Hampshire chickens up to the time they were ten weeks old? A. Up to the time they were ten weeks old? No, I don't.

"Q. And you don't remember how many sacks of feed you all fed those chickens after they were ten weeks old, before they were marketed, do you? A. No, I don't. It was a lot.

"Q. You don't have any record of the sacks, do you? A. No."

In C. H. Dean Co. v. Standifer, 37 Tex. Civ.App. 181, 83 S.W. 230, 232, the purchaser of a refrigerator sued for breach of warranty alleging that meat placed in the refrigerator had spoiled. In proving the value of the meat, testimony was introduced that the meat was worth $100, but both witnesses so testifying admitted that they had not weighed the meat nor did they attempt to give a reasonable estimate of the weight of the meat. The court in holding that the testimony was insufficient to establish the value of the meat stated:

"Over objections of appellant, the court permitted the defendant to testify: 'I lost, I think would be safe in saying, one hundred dollars worth of meat, caused by leakage and water running down and spoiling the meat, although I never weighed but thirty-five pounds of spoiled meat.' Emmet Carmichael, a witness for defendant, was also, over objections of appellant, allowed to testify: 'I would be safe in saying that we lost one hundred dollars worth of meat by the leakage while we were using it. We never weighed any spoiled meat but once, and that was thirty-five pounds, but I think we lost one hundred dollars worth of meat.' The value of the meat lost must be reckoned at its value in the market at the time it was spoiled. Beeman v. Banta, supra. [118 N.Y. 538, 23 N.E. 887, 16 Am.St.Rep. 779]. This testimony furnishes no evidence of the quantity of meat lost—unless it be the 35 pounds lost—nor of its market value. The quantity lost should have been proven to a reasonable certainty, and then its market value, so the jury could determine for themselves the damage occasioned by such loss. The testimony objected to hardly furnishes decent evidence for the basis of a guess as to the damages sustained by the alleged breach of warranty. The witnesses only thought so and so, and their 'wish' to recover $100 damages may have been 'the father to the thought.' It takes legitimate evidence of facts, which must be found by a jury, to take money from one man's pocket and put it in another's."

We hold that the evidence in this cause is insufficient to sustain the jury's finding to special issue No. 12–B, and appellant's fifth point is sustained.

The judgment of the trial court which awarded damages to the Robersons with respect to the New Hampshire chickens in the sum of $1,360 against appellant is reversed and that portion of the cause is remanded to the District Court of Gregg County, Texas, for a new trial.

Reversed and rendered in part; and reversed and remanded in part.